(C.D. 3731)

INTERCONTINENTAL AIR FREIGHT, INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided March 4, 1969)

*Barnes, Richardson & Colburn* (*E. Thomas Honey* of counsel) for the plaintiff.
*William D. Ruckelshaus,* Assistant Attorney General (*Arthur E. Schwimmer* and *Andrew P. Vance,* trial attorneys), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: Certain imported articles invoiced as indicators or multi-indicators were classified under the basket provision of schedule 6, part 5 of the Tariff Schedules of the United States, item 688.40, and assessed with duty at the rate of 11.5 per centum ad valorem. The protests listed above covering said merchandise were consolidated for the purpose of trial.

Plaintiff contends said merchandise is properly subject to classification under item 685.70, TSUS, as either indicator panels or visual signalling apparatus or as parts of either, all of which provide for a rate of 8.5 per centum ad valorem.

The pertinent portions of the involved provisions are as follows:

688.40 Electrical articles, and electrical parts of
 articles, not specially provided for_____ 11.5% ad val.
685.70 Bells, sirens, indicator panels, burglar and
 fire alarms, and other sound or visual sig-
 nalling apparatus, all the foregoing which
 are electrical, and parts thereof_____ 8.5% ad val.

The record herein consists of the testimony of one witness, Mr. Eugene F. Fallon, called on behalf of plaintiff and three exhibits received in evidence. The witness, a supervisor in the Commercial Department of the actual importer, General Radio Company, testified that he is familiar with the merchandise before the court since it is his responsibility to order said merchandise and also knows the use of the articles in the instruments manufactured by his company which he has had occasion to sell. The merchandise designated by the manufacturer as M–18 is the same article designated by General Radio Company as IND–1801. The word "Numerik" of the phrase Numerik Indicator which is stamped on the side of exhibit 1 is a word which was coined by the importer. The item designated on the invoice as M–3 is substantially the same as the item designated as M–18 except that it is a smaller version.

A description of the operation and basic construction of the imported article was given as follows:

A. Basically it is a simple indicator made up in the case of the IND 1800, 1801, made up of a number of clear plastic plates. These plates are parallel to the front edge of the indicator, and each has an etching to indicate a particular numeral or character such as a decimal point or comma. The 12 plastic strips are parallel to the front edge, and turn at a 90 degree angle, and go to the rear of the device, where there are 12 small bulbs. Each bulb, when energized from a power source, will light one plastic strip only. The light travels through the plastic strips until it reaches the point of activation, at which point the light is refracted and produces a visual signal, which indicates the digit in question.

Q. How many digits are there contained within the unit?—A. Ten digits, zero through 9.

Plaintiff's exhibit 3, the Operating Instructions, further explains the construction so far as is pertinent herein, as follows:

1 PURPOSE.

The Types IND–0300 and IND–1801 Numerik Indicators are general-purpose illuminated digital indicators, which can be used in the readouts of counters, computers, digital voltmeters, annunciators, and indicator boards for various systems where digital indication is desired.

2 DESCRIPTION.

The Type IND–0300 Numerik Indicator has ten digits 0 through 9. The Type IND–1801 has these ten digits plus a comma on the

right-hand side and a decimal point on the left-hand side of the numerals. In principles of operation and operating characteristics, the two types are identical.

The Numerik assembly is shown in Figure 1. At the rear of the assembly is a bakelite block containing either 11 (IND–0300) or 14 (IND–1801) silver-plated terminals. These connect to a set of incandescent lamps, which provide the illumination for the indicator, and to a common ground.

The 10 lamps (12 in the IND–1801) are mounted in holes drilled in a solid aluminum block. Light from the lamps is conducted to the display surface via a set of thin, clear, acrylic plates, one for each lamp. Thin sheets of reflective opaque material separate the plates, to minimize cross-illumination and attenuation of light.

The display arrangement is a stack of clear plastic strips, each one scribed with closely spaced dots in the form of a display character. A stack of 10 plates is just over 5/16 inch deep, so all symbols appear to be nearly in the same plane.

An indicator panel is one that conveys intelligence such as an elevator indicator which advises you of the floor you are on at any given moment. When the imported article is combined with a panel it forms a series of signalling devices that can transmit numerical information. The imported article may be used in any application where digital information is to be conveyed such as election results as shown on television, or on a scoreboard. The importer herein utilizes the involved article in basically two types of electronic equipment, a Capacitance Bridge Test Assembly and various frequency instruments. The former instrument conveys digital information relating to the capacitance of the unit listed as well as any dissipation or leakage. The latter type of instruments convey information that indicates the frequency of the signal.

The imported articles are not the same as or similar to counters since a counter has an accumulating ability such as an adding machine while this unit merely conveys the information fed into it. The witness was of the opinion that exhibit 1 was a visual signalling apparatus and that when you have the required number of indicators attached to the completed panel you have an indicator panel.

On cross-examination the witness testified that at the present time his company does not sell the involved indicator singly. The reason the witness believes the imported article to be a visual signalling apparatus is because the signal conveys intelligence.

Based upon the record as made plaintiff contends it has established the imported merchandise to be a visual signalling device or an idicator panel or part of either. The classification under item 688.40 carries with it the presumption that said articles are electrical articles. Plaintiff does not deny this and the record so establishes this fact. Plaintiff, however, contends that classification under item 685.70 is more specific

and accordingly should prevail. With this contention the court concurs. However, a determination must be made, based upon the record, as to what portion, if any, of item 685.70 is applicable herein.

The record establishes to our satisfaction that plaintiff's exhibit 1 is an indicator which transmits information visually by the illumination of specific numbers which are activated by the information fed to the indicator. The transmission of such information in the manner referred to above does, in our opinion, constitute a signal.

The position of defendant herein relative to the claim of visual signalling apparatus is that the imported indicators cannot operate alone but require "a receiver to which the indicator is attached, which receiver collects, collates, and transmits the information to the receiver. The indicator in such use is only part of a system which is used in demonstrating the results." Defendant therefore urges that a failure to comply with headnote 10(i)(j) relating to the parts provisions contained in the TSUS is fatal.

Whether the term "visual signalling apparatus" as used in item 685.70, *supra*, requires that an article classifiable thereunder receive, collect, collate and transmit the information to the indicator is the issue that results from the position of the defendant. A review of the Tariff Classification Studies of the United States Tariff Commission fails to offer any assistance insofar as ascertaining the intent of Congress in utilizing the language involved herein. There is, however, some information relative to this language contained in the Explanatory Notes to the Brussels Nomenclature which has been considered to be legislative history, see *F. L. Smidth & Company* v. *United States*, 59 Cust. Ct. 276, C.D. 3141, appeal pending. Heading 85.17 of said explanatory notes, *supra*, covers visual signalling apparatus and the following pertinent information—

> With the exception of signalling apparatus used on cycles or motor vehicles (heading 85.09) and that for traffic control on roads, railways, etc. (heading 85.16), this heading covers all electrical apparatus used for signalling purposes, whether using sound for the transmission of the signal (bells, buzzers, hooters, etc.) or using visual indication (lamps, flaps, illuminated numbers, etc.), and whether operated by hand (e.g., door bells) or automatically (e.g. burglar alarms).
>
> \* \* \* \* \* \* \*
>
> (C) Other electrical signalling apparatus (winking or intermittent lights, etc.) for aircraft, ships, trains or other vehicles (other than for cycles or motor vehicles—heading 85.09), but not radio or radar apparatus of heading 85.15.

It would appear to us that none of the visual signalling devices and certainly the bells and buzzers referred to are such apparatus as would require a receiver of information which is collected, collated and transmitted by it to the indicator. We are of the opinion that the

imported indicator is in and of itself a visual signalling apparatus and as such the question of "parts" and the proof necessary is not involved herein.

In view of our finding it is not necessary to consider the alternate claim of plaintiff for classification as indicator panels or the claim for parts of said panels.

Judgment will be entered accordingly.