(C.D. 3870)

TANROSS SUPPLY CO., INC. *v.* UNITED STATES

United States Customs Court, Second Division

(Decided July 22, 1969)

*Cassel & Benjamin* (*Julian R. Benjamin* of counsel) for the plaintiff.
*William D. Ruckelshaus*, Assistant Attorney General (*Steven Sosnov*, trial attorney), for the defendant.

RAO, Chief Judge: The merchandise involved in the four protests enumerated in the attached schedule, which protests have been consolidated for the purposes of trial and decision, was identified on the entries as "#1000 Educational Kits", "#1553 Microscope Dissecting Kits", and "#1560 Prepared Slides".

The #1000 educational kits were classified under item 651.75 of the Tariff Schedules of the United States as sets which contained two or more articles provided for in subpart E, part 3, schedule 6 of the said tariff schedules. Duty was assessed at the converted rate of 104½ per centum ad valorem by virtue of headnote 4, subpart E, part 3, schedule 6 of the TSUS on the basis of the rate applicable to the component subject to the highest rate of duty, the plastic-handled knife, dutiable under item 650.17 of the Tariff Schedules of the United States.

Plaintiff claims that only the plastic-handled knife and the needle probe are classifiable within item 651.75 of the Tariff Schedules of the United States as a set and that the other articles in the #1000 educational kits should be assessed with individual duty at the rate applicable to each article, as set forth in plaintiff's exhibit 2, referred to *infra*.

The #1553 microscope dissecting kit was also classified under item 651.75 of the Tariff Schedules of the United States as sets which contain two or more articles provided for in subpart E, part 3, schedule 6 of said tariff schedules. Duty was assessed at converted rates from about 38 per centum to 47 per centum depending on changes in value at different dates of entry, by virtue of headnote 4, subpart E, part 3, schedule 6 of the Tariff Schedules of the United States, on the basis of the rate applicable to the component subject to the highest rate of duty, the scissors, under item 650.91 of the Tariff Schedules of the United States.

As to the #1553 microscope dissecting kits, plaintiff claims said kits to be dutiable under item 708.71 of the Tariff Schedules of the United States at the rate of 25 per centum ad valorem, the duty applicable to compound optical microscopes, not provided with means for photographing or projecting the image, valued not over $25 each, by virtue of subpart A, headnote 4, part 2, schedule 7 of the act, which states that "sets comprised of tools, implements, and other articles fitted into and imported with cases containing microscopes provided for in item 708.71, and ordinarily sold at retail, and used, in conjunction with such microscopes, are classifiable therewith."

While the #1560 prepared slides were accorded duty free entry, their plastic cases were classified under item 772.20 of the Tariff Schedules of the United States at the rate of 15 percentum ad valorem as containers, of rubber or plastics, chiefly used for the packing, transporting, or marketing of merchandise. Plaintiff claims that these cases are containers, not imported empty, within General Headnote 6(b)(i), subject to the same duty as the articles they contain and that, since prepared slides are admitted free of duty, the cases should also be admitted duty free. The government, at the trial and in its brief, conceded that the classification of the cases was in error, and agrees with the contention of the plaintiff as to the plastic cases. The claim in protest 67/25392 for free entry of the plastic cases for the #1560 prepared slides will accordingly be sustained.

The pertinent text of the provisions of the Tariff Schedules of the United States above referred to is here set forth.

Classified under: The "#1000 Educational Kits" and the "#1553 Microscope Dissecting Kits" were classified as follows:

651.75 Sets (except sets specially provided for) which include two or more of the tools, knives, forks, spoons, or other articles provided for in different rate provisions of this subpart__ The rate of duty applicable to that article in the set subject to the highest rate of duty

Headnote 4, subpart E, part 3, schedule 6:

For the purposes of determining the rate of duty applicable to sets provided for in item 651.75, a specific rate of duty or a compound rate of duty for any article in the set shall be converted to its ad valorem equivalent rate, i.e., the ad valorem rate which, when applied to the full value of the article determined in accordance with section 402 or 402a of this Act, would provide the same amount of duties as the specific or compound rate.

Claimed under:

The 45 articles comprising "#1000 Educational Kits" are claimed dutiable according to the list set forth in plaintiff's exhibit 2. The defendant agrees that the various articles would have been so classified but for item 651.75.

The "#1553 Microscope Dissecting Kits" are claimed dutiable as follows:

> Compound optical microscopes; electron, proton, and similar microscopes and diffraction apparatus; all the foregoing whether or not provided with means for photographing or projecting the image; frames and mountings for the foregoing articles, and parts of such frames and mountings:
>> Compound optical microscopes:
>>> Not provided with means for photographing or projecting the image:

708.71      .             Valued not over $25 each _____      25% ad val.

Headnote 4, subpart A, part 2, schedule 7:

> Sets comprised of tools, implements, and other articles fitted into and imported with cases containing microscopes provided for in item 708.71, and ordinarily sold at retail, and used, in conjunction with such microscopes, are classifiable therewith.

The record in this case consists of the testimony of one witness and three exhibits introduced on behalf of the plaintiff. Exhibit 1 is a representative sample of the imported #1000 educational kit. Exhibit 2 is a schedule of 45 articles contained in the #1000 educational kit. Exhibit 3 is a representative sample of the #1553 microscope dissecting kit, exhibit 3-A representing the microscope imported with the #1553 microscope dissecting kit.

As to the #1000 educational kits, the parties stipulated and agreed that said kits are imported, bought and sold at wholesale and at retail as units. The difference existing between the parties is succinctly stated in defendant's brief in the following question: "Is a set under item 651.75, *supra*, limited to the articles provided for in subpart E, part 3, schedule 6?" The plaintiff contends that the "set" rate should be applied only to the plastic-handled knife and the needle probe, which are the only items of the 45 items comprising the kits which are provided for in said subpart E, the remainder of said items being within various others of the tariff schedules as evidenced by plaintiff's exhibit 2. It is the defendant's position, however, that all of the items comprising the kits are subject to the "set" rate computed in accordance with headnote 4 to subpart E.

Plaintiff seeks to support its position by the citation of several cases involving the question of what constitutes an entirety for tariff purposes. Said cases arose under prior statutory provisions and are inapposite to a determination of the present issue.

Item 651.75 of the Tariff Schedules of the United States with which we are here concerned projects a new concept in the assessment of import duties. An explanation of its purpose and scope is contained in the following statement from the Tariff Classification Study, volume 6, at page 200, which Classification Study was prepared for the benefit of Congress prior to the enactment of the tariff schedules:

> Item 651.75 is a new provision covering sets which is not derived from any specific provisions of the current tariff act. It is designed primarily to facilitate customs administration. Many articles of types provided for in this subpart are bought and sold as sets, and this proposed provision acknowledges this fact and provides realistically therefor. Although this provision would apply to the entire set the highest rate applicable to any article in the set, this would not impose undue hardship on importers inasmuch as they could always import the various articles and obtain the regular rates if they deferred the packaging of them as sets until after importation. It is significant to note that the proposed provision corresponds with a standard provision of the Brussels Nomenclature.

The "standard provision" of the Brussels Nomenclature referred to is doubtless that contained in headnote 3 to Chapter 82, which reads as follows:

> Sets (other than manicure or chiropody sets (heading No. 82.13)) comprising an assortment of tools, cutlery, spoons, forks or other articles of a kind falling within the different headings of this Chapter, fitted in cabinets, boxes, cases or the like, are to be classified as that one of the constituent articles which is chargeable with the highest rate of duty.

It would appear that the sets described in the Brussels Nomenclature would be limited to such sets as are comprised of articles encompassed by Chapter 82. It would seem obvious, however, that the Tariff Commission did not intend to so limit the provision by the language which was selected for item 651.75. Instead of adopting the Brussels Nomenclature and providing for *sets comprising* an assortment of tools et cetera, the Tariff Commission chose other phraseology and provided for *sets which include* two or more of the tools et cetera. Clearly this is not restrictive terminology. If this alone were not indicative of an intention to include in item 651.75 sets having two or more of the items mentioned in the subpart but not otherwise restricted thereto, we find substantiation in the following excerpt from the Summaries of Trade and Tariff Information (1968), Schedule 6, Volume 6, page 148—

The sets covered by this summary (TSUSA item 651.7560) are those having two or more of the tools provided for in the aforementioned subpart 3E; *these sets may include items not provided for as separate articles under subpart 3E.* * * * The following are typical of the sets covered in this summary:   Barbecue sets consisting of a turner, fork, tongs, basting brush, and box; kitchen tool sets consisting of a potato masher, icing spatula, basting spoon, turner, ladle, pot fork, and rack; carpenters' sets containing a screwdriver, hammer, adjustable wrench, measuring tape, combination pliers, utility knife, and putty knife; bar sets containing an ice pick, double jigger, spoon, can and bottle opener, strainer, cork screw, stand, and box; miniature garden tool sets consisting of a fork, spade, and cultivator; file sets; ignition wrench and plier sets; and sets of scissors. Cases, boxes, or containers of the types ordinarily sold at retail with the tools or other articles in the set are classifiable with such articles if imported therewith. [Emphasis supplied.]

The quotation from the 1968 Summaries above set forth indicates that the sets provided for in item 651.75 "may include items not provided for as separate articles under subpart 3E." Included within typical" sets covered by the provision are items such as a basting brush as part of a barbecue set, a measuring tape as part of a carpenter's set, a double jigger and stand as part of a bar set, *inter alia*, which items do not appear to be encompassed by the "Tools, Cutlery, Forks and Spoons" provisions of subpart E.

In the light of the foregoing considerations, the court is of the opinion that inasmuch as it is not disputed that the plastic-handled knife and the needle probe are articles provided for in subpart E and that said articles together with the other articles comprising the educational kits are imported, bought and sold at wholesale and at retail as units, the #1000 educational kits in issue come within the provisions of item 651.75 and are subject to duty at the highest rate applicable to any article encompassed within the provision for such sets.

Plaintiff's claim as to the #1000 educational kits will therefore be overruled.

Consideration will next be given to the classification of the #1553 microscope dissecting kits.

In this connection plaintiff introduced the testimony of Richard Lee Korte, who testified that he is the service manager for Tasco Sales, Inc., a companion company of the plaintiff corporation, and that he had been so employed from 1960 to 1962 and from 1966 to the present. He stated that during the period 1962 to 1966 he was associated with Barry Instrument, Inc., as a repair technician, in which capacity he made repairs to thousands of optical and mechanical microscopes of all price ranges used in the medical and biological field. He stated also that he did not have any formal education in optics.

Korte described a compound microscope as an instrument that comprises two stages of magnification, having two or more optical lenses. He related that he was familiar with exhibit 3-A and identified it as a compound microscope having two stages of magnification, containing four lenses, and valued under $25. He explained that professional microscopes occasionally have two compound lenses, one of which is an objective lens and the other, an ocular lens; that the objective lens is the one nearer to the subject matter that is being examined, and the ocular lens is the one nearer to the eye. He stated that with the use of these two lenses a mirror image is normally experienced. With the use of exhibit 3-A, however, a mirror image is not experienced because exhibit 3-A contains an erector system, which reverses the final image, resulting in a true reproduction of the initial image.

The witness further testified that he is familiar with the instruments contained in exhibit 3 and that they are used in conjunction with the microscope for dissecting specimens, that the microscope is never sold separately from the kit and that he never personally used the microscope in conjunction with the kit.

On cross-examination the witness testified that exhibit 3-A does not have an erector system and that his testimony on direct examination that it did was wrong. He stated that he personally has not performed any experiments with the #1553 microscope dissecting kit and that he has never seen the kit being used in the field or in the laboratory and that he did not know the power of the microscope.

Defendant, while agreeing that the microscope (exhibit 3-A) is a "form of compound microscope," contends that the plaintiff has failed to sustain the burden of proof that the other articles in the #1553 dissecting kits are "used, in conjunction with such microscopes" within the meaning of that phrase as used in headnote 4 of subpart A, part 2, schedule 7, set forth *supra*. Defendant makes reference to General Headnote 10(e)(i) of the Tariff Schedules of the United States which provides that "a tariff classification controlled by use (other than actual use) is to be determined in accordance with the use in the United States at, or immediately prior to, the date of importation, of articles of that class or kind to which the imported articles belong, and the controlling use is the chief use, i.e., the use which exceeds all other uses (if any) combined."

It is apparent, therefore, that for plaintiff to succeed in its claim for classification of the #1553 dissecting kits within the provisions of item 708.71 and headnote 4, subpart A, part 2, schedule 7, *supra*, the record must reflect chief use of the microscopes in issue in conjunction with the tools or implements imported in the same kits. Apart from the contradictory nature of some of the testimony offered by plaintiff, the record discloses that the only witness called to testify had not per-

sonally used the #1553 microscope dissecting kits in issue and had never seen the kits being used in the field or any laboratory.

As was stated by the Court of Customs and Patent Appeals in *L. Tobert Co., Inc., American Shipping Co.* v. *United States*, 41 CCPA 161, C.A.D. 544 (1953)—

> While judicial notice may be taken of well known uses of an article, chief use is a question of actual fact which, in a case of this character, should be established on the basis of positive testimony representative of an adequate geographical cross section of the nation. In other words, we are reluctant to disturb the presumption of correctness attaching to the collector's classification in the absence of unequivocal proof successfully contradicting the validity of such classification.

For failure to support its burden of proof that the implements or tools in exhibit 3 are chiefly used in conjunction with the accompanying microscope, exhibit 3-A, we have no alternative but to overrule plaintiff's claim for a reclassification of the #1553 microscope dissecting kits involved.

In view of the recent decision of the Court of Customs and Patent Appeals in the case of *Import Associates of America, Fraser's Inc.* v. *United States*, 56 CCPA—, C.A.D. 961 (decided May 22, 1969), it is clear that the district director of customs did not pursue the proper method of computing the duties assessable against the merchandise at bar. However, inasmuch as the substantive claims of the protests have not been sustained and no error has been alleged with respect to the computation of duties, the director's action cannot affect the result in this case.

Judgment will be entered in accordance with the views above expressed.