58 CCPA

**ROSS PRODUCTS, INC., Appellant,**

v.

**The UNITED STATES, Appellee.**
**Custom Appeal No. 5374.**

United States Court of Customs and Patent Appeals.

Oct. 29, 1970.

Siegel, Mandell & Davidson, New York City, attorneys of record, for appellant. Joshua M. Davidson, Allan H. Kamnitz, New York City, of counsel.

William D. Ruckelshaus, Asst. Atty. Gen., Andrew P. Vance, Chief, Customs Section, Frederick L. Ikenson, New York City, for the United States.

Before RICH, ALMOND, BALDWIN and LANE, Judges, and McMANUS, Judge, Northern District of Iowa, sitting by designation.

BALDWIN, Judge.

This is an appeal from the judgment of the United States Customs Court, Second Division,[1] overruling two consolidated classification protests of appellant. The subject importations are decorative planters in the form of simulated bird cages containing a number of artificial roses of plastic material with small electric bulbs inside the rosebuds, which bulbs are arranged on an electric cord terminating in an electrical plug.

The imported articles were assessed with duty of 19% ad valorem under item 653.40 of the Tariff Schedules of the United States (TSUS) as illuminating articles. Appellant claims that the articles are properly dutiable at 11.5% ad valorem under item 688.40, TSUS, as electrical articles not specially provided for.[2]

---

1. Ross Products, Inc. v. United States, 62 Cust.Ct. 688, C.D. 3849 (1969).

2. The pertinent provisions of the TSUS are as follows:

    *Classified under*:

    Illuminating articles and parts thereof, of base metal:

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

       Other:

\* \* \*     Table, floor and other portable lamps for indoor illumination, of brass ..............   \* \* \*

653.40   Other .................................   19% ad val.

    *Claimed under*:

688.40   Electrical articles, and electrical parts of articles, not specially provided for .................   11.5% ad val.

The record includes testimony of two witnesses, one for each party, and exhibits representative of the merchandise involved in the two protests.

The importer's witness was Hyman Ross, an official of the firm and the designer of the importations. Mr. Ross testified that he designed the articles for use to enhance the appearance of a room. He further stated that the small bulbs in the articles, which were tinted to blend with the color of the artificial roses and disposed in the buds so that only the tips protruded over the flowers, were provided to give the flowers "a glistening or life-like effect like after the morning dew." In expressing his opinion that the articles were not illuminating articles, the witness stated:

> I would hardly call them an illuminating item. They don't throw off enough light. Most of the bulb is submerged in the petal of the flower itself. It wasn't designed to be an illuminating item. It was designed as a decorative item, [to] give off just a sparkling effect to the flowers.

Jacob Fogelson, secretary of a trade association for manufacturers of lamps and shades in the metropolitan New York area, was a witness for the government. He testified that there was "a very broad classification" called novelty lamps, that a lamp was described in the industry as "a container of light", and that a lamp "will run anywhere from a purely functional purpose all the way to the other extreme to enhance the decorative aspects of a particular article." Mr. Fogelson further commented that "an illuminating article to me is either a fixture or a lamp," and stated that he was of the view that the imported articles meet that definition.

In ruling that the importations were properly classified, the Customs Court relied particularly on United States v. N. Minami & Co., Inc., 29 CCPA 169, C.A.D. 188 (1941), and Solomon & Son v. United States, 13 Ct.Cust.Appls. 353, T.D. 41256 (1925). We are unable to agree that either case supports the classification of the present importations as illuminating articles under item 653.40.

In the *Minami* case, the importations were Christmas wreaths each having attached thereto a socket for an electric light on a cord having a plug for insertion into a wall socket. The court there upheld the importer's protest that the importations properly fell within paragraph 353 of the Tariff Act of 1930 as "articles having as an essential feature an electrical element or device, such as * * * signs." Neither the word "illuminating" itself nor any other forms of it appear in paragraph 353 of the 1930 Act in which the electrically lighted Christmas wreaths of *Minami* were classified. Upon consideration, we are of the opinion that the *Minami* case tends more to indicate that the present articles, which are lighted decorative items also, should be classified on the basis of their electrical characteristics rather than the lights they contain.[3]

The *Solomon* case involved interpretation of paragraph 218 of the Tariff Act of 1922, which dealt with "illuminating articles of every description, including chimneys, globes, shades, and prisms, for use in connection with artificial illumination." It was held there that certain colored pieces of glass, faceted, flat on one side and convex on the other, used for automobile lamps and so located on such lamps as to cause the light emanating from an electric light bulb to pass through them, were classifiable under that paragraph. In arriving at that conclusion, the court stated:

> It is perfectly obvious from the language of the provisions that it was in-

3. It is interesting to note that the same merchandise as involved here, imported before the TSUS became effective, *was* held classifiable under paragraph 353 in a companion case, Ross Products, Inc. v. United States, 62 Cust.Ct. 696, C.D. 3850 (1969), decided on the same day and by the same Division of the Customs Court as the present case. The government did not appeal from the judgment of the Customs Court in this other case.

tended by Congress to include within the scope of the paragraph all illuminating articles used in connection with artificial illumination whether decorative or merely practical. The articles mentioned in the paragraphs are not such as to generate light; they but disperse the rays of light to give the desired illuminating effect. Therefore they are for use in *connection with* artificial illumination. [Emphasis in original].

The Customs Court, in the case now before us, expressly relied on a comment in *Solomon* regarding paragraph 218 of the 1922 Act, reading as follows:

We do not believe that the character, degree or extent of illumination furnished by an article is a proper test under the statute, if it is chiefly used in connection with artificial illumination and in such manner as to pass, reflect, refract, disperse, color or otherwise affect the light for either practical or ornamental illuminating purposes.

It should be apparent, however, that paragraph 218, in providing for "illuminating articles of every description, * *, for use in connection with artificial illumination" embodied far more comprehensive terminology than the mere recitation of "illuminating articles" in item 653.40 of the TSUS, at bar.

Moreover, *Solomon* must be interpreted in light of the subsequent case of United States v. General Display Case Co., Inc., 21 CCPA 542, T.D. 46976 (1934). That case related to cylindrical articles of white and translucent glass, having an advertising inscription thereon in black and adapted to have an electric-light bulb inserted therein, which articles were chiefly used for advertising purposes but also provided incidental illumination of the surroundings. The court in *General Display* ruled that the disputed importations there were not illuminating articles under paragraph 218(c) of the 1930 Tariff Act. Noting that that paragraph read essentially the same as the part of paragraph 218 of the 1922 act involved in *Solomon*, and analyzing the pertinent cases, including *Solomon,* the court stated:

These cases emphasize the thought that the provision for illuminating articles to be used in connection with artificial illumination includes only such articles as are chiefly used in connection with artificial illumination for illuminating purposes. If they are chiefly used for some other purpose, and were constructed for that purpose, and if the illumination provided by them is minor and incidental, only, to their chief use, and are not intended for or used for the purpose of illuminating the surrounding atmosphere, they should not be classified as illuminating articles under said paragraph 218(c). * * *

■ Turning now to the language of the current statute, the issue before us is whether the designation "illuminating articles" in item 653.40 of the TSUS is of such scope as to include the present merchandise. Obviously, item 653.40 describes the "articles" in terms of the function of "illuminating". In view of the term itself and the emphasis on use as a factor in interpreting "illuminating" in *General Display*, it is our conclusion that the use of the articles is a significant factor in item 653.40.

■■ The Customs Court observed, and we think correctly, that the record here does not establish a commercial meaning for "illuminating articles". The common and ordinary meaning must govern. See Passaic Worsted Co. v. United States, 17 CCPA 459, T.D. 43916 (1930). To that end, the government analyzes various definitions of "illuminate" and offers the conclusion that "an item is an illuminating article within the common meaning of that term if it 'lights up' something." We need not go into the definitions specifically since we agree with the government's conclusion as far as it goes. However, we think it also critical that in order to serve as an "illuminating article", the article must be used to "light up" something other than itself. While an article which merely serves to light up itself may be illumi-

nated, it can hardly be considered an *illuminating* article.

■ Considering next the facts established by the record, the Customs Court found:

> According to the testimony in the case at bar, the articles were designed to make use of the lights. The tint of the bulb was carefully chosen to produce the kind of lighting effect desired. The lighting was to enhance the decorative effect of the articles. The bulbs gave light to the artificial flowers and would of course glow in a darkened room and give some light to the surrounding area.

While, again, we do not disagree with that analysis, we think that the record clearly warrants the further conclusion that the importations are basically decorative articles and are useful as decorations in lighted areas as well as in the dark and with their bulbs unlighted as well as lighted. The function of the lights is to enhance the decorative effect of the articles by serving as a part of the artificial flowers as well as by furnishing illumination to the articles themselves. Any lighting of the surrounding space is only incidental to the use of the importations as decorative articles which may be at least partially self-illuminated.

It may well be, as urged here and apparently stressed below, that articles which are "lamps" or "lights" are, either by common or commercial understanding, also illuminating articles, even in the case of highly decorative lamps or of night lights (which are obviously used to illuminate an area even though they produce only a minimum amount of light). However, neither the testimony of record nor inspection of the representative exhibits warrants a conclusion that the present articles are "lamps" or "lights". Rather the record is convincing that they are decorative articles in the form of planters having no substan-

tial use as articles for illuminating the surrounding area. Thus, any presumption of substantial use as an illuminating article that might arise from the original classification of the articles under item 653.40 is overcome.

Except for its contention for classification in item 653.40, which we have found erroneous, the government does not challenge the importer's claim for classification as electrical articles, n. s. p. f., in item 688.40, TSUS. Also, the latter classification appears applicable from the present record. The importer's claim is thus found correct and the judgment of the Customs Court is reversed.

Reversed.