(C.D. 4494)

AMICO, INC. (FORMERLY KNOWN AS: EXHIBIT SALES, INC.)
*v.* UNITED STATES

Court Nos. 69/20864 and 71-7-00468

(Decided December 26, 1973)

*Allerton deC. Tompkins* for the plaintiff.

*Irving Jaffe*, Acting Assistant Attorney General (*Andrew P. Vance* and *John N. Politis*, trial attorneys), for the defendant.

MALETZ, Judge:  These consolidated actions involve the proper tariff classification of articles invoiced as "Handy Clown Flashlights"

that were imported from Hong Kong and entered at the port of Philadelphia in 1968 and 1970. The articles were classified by the government under item 683.70 of the tariff schedules as flashlights and assessed duty at the rate of 35% ad valorem.

Plaintiff claims that this classification is erroneous and that the articles are properly classifiable under item 737.90 as toys at the rate of 31% for the articles that were entered in 1968 and at the rate of 24% for the articles that were entered in 1970. For the reasons that follow, we sustain plaintiff's claim.

The pertinent provisions of the tariff schedules read as follows:

Classified under:

>Portable electric lamps with self-contained electrical source, and parts thereof:
>
>683.70    Flashlights and parts thereof_____    35% ad val.

Claimed under:

Schedule 7, Part 5, Subpart E

Subpart E headnotes:

> 1. The articles described in the provisions of this subpart (except parts) shall be classified in such provisions, whether or not such articles are more specifically provided for elsewhere in the tariff schedules * * *
>
> *      *      *      *      *      *      *
>
> 2. For the purposes of the tariff schedules, a "toy" is any article chiefly used for the amusement of children or adults.
>
> *      *      *      *      *      *      *
>
> Toys, and parts of toys, not specially provided for:
>
> *      *      *      *      *      *      *
>
> 737.90      Other_____    [1]

At the outset, it is fundamental that in a tariff classification controversy, the plaintiff has the twofold burden of proving that the government's classification is erroneous and establishing the correctness of its own affirmative claim. In the present case, however, this twofold burden would be satisfied if plaintiff has proven that the imported merchandise was a "toy" for tariff purposes, inasmuch as headnote 1 (previously quoted) directs that a "toy" be so classified even if it is also encompassed by another provision (e.g., flashlights) which is more specific. See e.g., United States v. Topps Chewing Gum, Inc.,

---

[1] 31% ad valorem for merchandise entered in 1968; 24% for merchandise entered in 1970. See T.D. 68–9.

58 CCPA 157, 158, C.A.D. 1022 (1971). Against this background, the single question is whether plaintiff has shown by a preponderance of the evidence that the imported articles are toys, i.e., chiefly used for the amusement of children.

Turning to the record, the importation in issue consists of a red flashlight body which is powered by two D type batteries (which are not imported) and activated by a metal on/off switch or a plastic button for flashing. At one end of the flashlight body is a screw-type cap which has a spring on the interior. At the other end is a reflector and bulb, but no lens. Attached to this end is a screw-type collar and a gaudy red and yellow plastic clown head which are molded together into one piece and hold the reflector (into which the bulb is screwed) and batteries in place.[2] The head is made in such a way as to resemble the head of a smiling clown; it contains two round openings depicting the clown's eyes, a round opening for the nose, and a wide opening for the mouth. When the light switch is put on or the plastic button depressed, a diffused light comes through these openings in the clown's face and projects a clown-like image on the surface of a darkened area.

Plaintiff presented three witnesses[3] who cumulatively had seen the article used in many places in the United States. In this connection, they testified—without contradiction—that the articles were used only as playthings for the amusement of children. They pointed out that only when it was dark did the article give any effect by light. In this connection, they stated that older children flashed on the light to shine the clown-like image on a wall, ceiling or other object in a darkened place or flashed the light at each other. Younger children, on the other hand, used the article as a puppet or doll without flashing the light on. According to the witnesses, the features that make the imported article attractive as a toy are its funny clown face and its ability to project the clown's smiling face image on the surface of a darkened area; its bright colors; its ease of operation; and its status as a puppet.

Additionally, plaintiff's witnesses testified—again without contradiction—that the imported article is unsatisfactory as a flashlight[4] and is not used as a light source or for practical illumination purposes.

The record further shows that the import is sold by plaintiff in a

---

[2] Since the clown head portion holds the reflector and batteries in place, the importation cannot be operated unless the clown head portion is attached.

[3] Two of these three witnesses were employed by the plaintiff-importer; one as import manager and the other as a salesman. The third witness was a psychologist who was also the wife of the vice president of the plaintiff-importer.

[4] A flashlight is a small battery-operated, portable electric light. See *Webster's New International Dictionary* (1949). See also *Biddle Purchasing Co. v. United States*, 48 Cust. Ct. 251, 257, C.D. 2345 (1962), *aff'd*, 50 CCPA 71, C.A.D. 823 (1963). It is also described in the heading preceding item 683.70 (quoted previously) as a portable electric lamp with a self-contained electrical source.

polybag with an attached cardboard header which describes the import as "A Wonderful Toy" and states that—

> The bright beam of litht [sic] shines throuth [sic] the clown's eyes and mouth
>
> When flashed on a darkened wall, the reflection looks like a smiling clown's image.

The article retails at a price ranging from 88 cents to $1.00 and is distributed through toy departments (and sometimes notion departments) of department stores; through party-plan sales where hostesses offer selected merchandise at parties in their homes; and by the carnival trade. It is not carried by hardware stores or by the sections of department stores handling flashlights.

Defendant presented one witness, the vice president of a company in New York City which merchandises boys' and girls' accessories. He testified that his company carried an item it called a "Clown Flashlight" which is similar to the imported article and that in his company's 1970 and 1971 catalogues, the item was marketed with flashlights and not as a toy. It is to be added that the item is sold in a box which is labelled "JOKER FLASHLIGHT" and contains the following statement thereon:

> Plastic JOKER head in non-toxic paint
> Light beam shoots through Eyes, Nose & Mouth
> It is a toy-like fun [sic] for children and a practical use for adults.

Coming now to the legal aspects, the principles applicable here as to chief use were set out in *B. Shackman & Company, Inc.* v. *United States*, 67 Cust. Ct. 372, 383, C.D. 4300 (1971), as follows:

> Chief use, * * * is an issue of fact to be established on the basis of positive testimony representative of an adequate geographic cross section of the nation. *L. Tobert & Co., Inc., et al.* v. *United States*, 41 CCPA 161, C.A.D. 544 (1953). However, under certain circumstances chief use can be proven inferentially. See *New York Merchandise Co., Inc.* v. *United States*, 62 Cust. Ct. 674, C.D. 3847 (1969); *Border Brokerage Company, Inc.* v. *United States*, 65 Cust. Ct. 277, C.D. 4089 (1970) (appeal pending). In fact the sample itself may be sufficient to overcome the presumption of correctness. *United States* v. *Colibri Lighters (U.S.A.) Inc.*, 47 CCPA 106, C.A.D. 739 (1960). And this is particularly true in toy cases where the sample can permit the drawing of inferences as to use nationally. *Fred Bronner Corp.* v. *United States*, 57 Cust. Ct. 428, C.D. 2832 (1966); *Wilson's Customs Clearance, Inc.* v. *United States*, 59 Cust. Ct. 36, C.D. 3061 (1967). Further, importers, merchants and executives concerned with ordering, selling, distributing and promoting an article have to know the article's chief use and may properly give testimony as to such use. *International Customs Service, Inc., et al.* v. *United States*, 63 Cust. Ct. 255, 259, C.D. 3905 (1969); *Novelty Import Co., Inc.* v. *United States*, 60 Cust. Ct. 574, 582, C.D. 3462, 285 F. Supp. 160 (1968).

To summarize, the uncontradicted testimony—which the court finds credible—proves beyond question that the importations are chiefly used as playthings by children for their amusement and that they are entirely unsuitable for use as a flashlight. Added to this, a demonstration of a lighted sample of the imported article in a darkened courtroom, together with a later examination by the court of the lighted sample in a darkened room, shows conclusively that it provides only the most negligible illumination and is thus virtually useless as a flashlight.

It also bears mention that the imported article was represented to the public by the plaintiff-importer as a toy. Although not determinative, the manner in which a merchant thus represents his goods has obvious probative value. See e.g., *Davis Products, Inc.* v. *United States*, 59 Cust. Ct. 226, 230, C.D. 3127 (1967) ; *New York Merchandise Co., Inc.* v. *United States*, 62 Cust. Ct. 38, 44, C.D. 3671, 294 F. Supp. 971, 976 (1969).

Defendant argues, however, that category 3 of the *Summaries of Trade and Tariff Information*, Schedule 6, Volume 10, p. 215 (1969) offers support for the government's classification of the importation in issue as a "novelty flashlight." This argument, however, is devoid of merit. In the first place, *Summaries* published "*after* the enactment of the tariff schedules by Congress, * * * cannot be considered indicia of congressional intent. *W. R. Filbin & Co., Inc.* v. *United States*, 63 Cust. Ct. 200, 212, C.D. 3897, 306 F. Supp. 440, 448 (1969). [Emphasis in original.] Second, even assuming that *Summaries* can be used to substantiate what Congress intended in using particular terminology,[5] those in question fail entirely to support defendant's position. The *Summaries* upon which defendant relies lists as its third category of flashlights, "(3) pen light and novelty" (*id.*, p. 215), but goes on to state (*id.*, p. 216) :

> * * * Pen light types are generally small flashlights—so designated because they are about the size of a fountain pen. Most of the pen light types are suitable for only light service or intermittent use and are frequently sold as novelty items. * * *

From what has been said, it is obvious that the articles above referred to are "flashlights" that are used for illumination purposes and thus in no way encompass the articles here in issue.

In sum, it is held that the imported articles are, as plaintiff contends, properly classifiable as toys under item 737.90 and not as flashlights under item 683.70. Plaintiff's claim is therefore sustained and judgment will be entered to that effect.

---

[5] See *Tanross Supply Co., Inc.* v. *United States*, 63 Cust. Ct. 38, 42, C.D. 3870 (1969), *mod., Id.* v. *Id.*, 58 CCPA 26, C.A.D. 1000 (1970).