NEW YORK MERCHANDISE CO., INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 75-2-00514

*Stein, Shostak, Shostak & O'Hara, Inc. (John N. Politis, Esq.* of counsel) for the plaintiff.

*Thomas S. Martin,* Acting Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch (*Susan Handler-Menahem,* trial attorney) for the defendant.

(Decided March 12, 1981)

Newman, Judge: Plaintiff contests the classification by Customs at the port of Los Angeles of certain merchandise invoiced as a "Plastic Star Lite," imported from Hong Kong in 1972. Upon liquidation of the entry, the merchandise was assessed with duty at the rate of 13.75 per centum ad valorem under the provision in item 683.80 of the Tariff Schedules of the United States (TSUS) for "other" portable electric lamps with self-contained electrical source. Plaintiff claims that the imports are properly dutiable at the rate of 5.5 per centum ad valorem under the provision in item 688.40, TSUS, as modified by T.D. 68–9, for electrical articles not specially provided for.

## ISSUE PRESENTED

It is undisputed that the imported articles are portable and have a self-contained electrical source. The sole issue for determination is whether the articles are lamps within the purview of item 683.80, TSUS.

## THE RECORD

At the trial, the parties each presented the testimony of one witness and submitted several exhibits.[1] Plaintiff's witness was Ko Yamaguchi, a buyer and general manager of the Los Angeles branch of New York Merchandise; defendant's witness was Leonard W. Cheslak, president of Poly Optical Products. The official entry papers were received in evidence as an unmarked exhibit.

The pertinent facts are:

It appears that the subject merchandise, marketed under the name "Glo-Lite", comprises a battery-powered [2] fiber optic light enclosed in a transparent plastic globe mounted to a plastic base. The fiber optic component is mounted in the plastic base over a small light bulb. When battery power is activated by an on/off switch, the light from the bulb diffuses throughout the fibers and pinpoints of light glow at the ends of the individual fibers, creating a decorative and mood-setting effect.

A courtroom demonstration and a personal inspection of the samples in a darkened room reveal that the degree of illumination of the area

---

[1] Plaintiff objected to the admission into evidence of defendant's exhibit C for identification, and I reserved ruling on the objection (R. 60–61). The proposed exhibit is ostensibly a catalog of Hammacher Schlemmer, with the back cover depicting certain fiber optic lamps. Defendant's witness admitted on voir dire that he had no connection with the publication of the catalog or with Hammacher Schlemmer, and that he had never seen the proposed exhibit before it was presented to him at the trial. Statements by Government counsel at the trial as to the source of the exhibit (R. 57, 60) are, of course, not evidence in the case. In its post-trial brief, defendant has not pressed the admissibility of exhibit C for identification. Since authentication and identification of the p oposed exhibit is totally lacking (see rules 901 and 902 of the Federal Rules of Evidence), plaintiff's objection is sustained. Accordingly, all testimony of defendant's witness concerning the fiber optic devices depicted in the catalog (R. 56–57, 61–62) is stricken from the record.

[2] Batteries were not included in the importation.

immediately surrounding the articles is insufficient for their normal use as lamps for reading or working. Basically, the imports are self-illuminating, and the purpose of the light is simply to create a decorative effect. Additionally, while the imports are represented on their containers as a "Nite Lite", it is plain that the use of the articles as night-lights would require such frequent battery changes as to make that use economically impracticable.

Fiber optic lights (as a class) are sold in a variety of outlets: drugstores, discount houses, lamp stores, mail-order catalog houses, and stores selling decorative accessory articles. Interestingly, in department stores, fiber optic lights are sold in the lamp, audio, and stationery departments.

## PARTIES' CONTENTIONS

Plaintiff contends that the "Glo-Lites" are not "lamps" because they do not provide practical illumination, but merely illuminate themselves as decorative, mood-setting articles. Defendant maintains that the imported articles are lamps because they furnish artificial light, and the amount of artificial light produced is immaterial. Defendant further argues that the imports can illuminate the surrounding area sufficiently to act as a night-light, flashlight, or as a source of light for reading. Lastly, defendant stresses that item 683.80 is an eo nomine provision and therefore the use of the imports as decorative articles is irrelevant.

## DISCUSSION

As noted, plaintiff urges that, for classification as lamps under item 683.80, TSUS, the subject merchandise must constitute illuminating articles and thus serve as a practical source of illumination outside of the articles themselves. In this connection, plaintiff aptly points out that term "lamps" appears in several places under the superior heading to items 653.30 through 653.39, TSUS, which superior heading provides for "illuminating articles and parts thereof, of base metal". Fundamentally, absent any indication of contrary legislative intent, the term "lamp" must be presumed to have been used in the same sense throughout the statute. *Productol Chemical Co.* v. *United States*, 74 Cust. Ct. 138, 151, C.D. 4598 (1975), and cases cited. No legislative history has been called to my attention which establishes that the term "lamp" in item 683.80 was intended to have a different meaning than that implied by the superior heading to items 683.30 through 653.39. Hence, plaintiff's construction of the term "lamp" in item 683.80 as an illuminating article has merit.

The record, however, clearly establishes that the imports are decorative articles and have an extremely low level of illuminating capacity

outside of the articles. They are entirely inadequate where any significant illumination outside the articles themselves is required for tasks such as reading or navigation. The instant facts are strikingly analogous to those in *Ross Products, Inc.* v. *United States*, 58 CCPA 1, C.D. 994, 433 F. 2d 804 (1970). There, the merchandise comprised decorative planters in the form of simulated bird cages containing a number of artificial roses of plastic material with small electric bulbs in the rosebuds. Since the articles could not provide any significant illumination of the surrounding area, the appellate court rejected the argument that they were classifiable as illuminating articles under item 653.40, TSUS. Moreover, the following rationale in *Ross Products* is particularly significant (58 CCPA at 5):

> Considering next the facts established by the record, the Customs Court found:
>> According to the testimony in the case at bar, the articles were designed to make use of the lights. The tint of the bulb was carefully chosen to produce the kind of lighting effect desired. The lighting was to enhance the decorative effect of the articles. The bulbs gave light to the artificial flowers and would, of course, glow in a darkened room and give some light to the surrounding area.
>
> While, again, we do not disagree with that analysis, we think that the record clearly warrants the further conclusion that the importations are basically decorative articles and are useful as decorations in lighted areas as well as in the dark and with their bulbs unlighted as well as lighted. The function of the lights is to enhance the decorative effect of the articles by serving as a part of the artificial flowers as well as by furnishing illumination to the articles themselves. Any lighting of the surrounding space is only incidental to the use of the importations as decorative articles which may be at least partially self-illuminated.
>
> It may well be, as urged here and apparently stressed below, that *articles which are lamps or lights are, either by common or commercial understanding, also illuminating articles*, even in the case of highly decorative lamps or of night lights (which are obviously used to illuminate an area even though they produce only a minimum amount of light). *However, neither the testimony of record nor inspection of the representative exhibits warrants a conclusion that the present articles are "lamps" or "lights". Rather the record is convincing that they are decorative articles in the form of planters having no substantial use as articles for illuminating the surrounding area.* Thus, any presumption of substantial use as an illuminating article that might arise from the original classification of the articles under item 653.40 is overcome. [Italic added.]

Predicated upon the foregoing rationale in *Ross Products*, it follows: Articles which utilize light purely for its decorative effect and to furnish illumination to the articles themselves, and do not have any substantial capacity for illuminating the surrounding area, are not

illuminating articles, and consequently are not "lamps" within the common meaning of that term.

Plaintiff's contention—that devices having negligible illuminating capacity and primarily used for purposes other than illumination are not classifiable as portable electric lamps—is also amply supported by *Amico, Inc.* (formerly known as: Exhibit Sales, Inc.) v. *United States*, 71 Cust. Ct. 182, C.D. 4494 (1973). There, the question was whether certain so-called "Clown Flashlights" were properly classifiable under item 683.70, TSUS, as flashlights. The provision in item 683.70, TSUS for flashlights is indented under the same superior heading, viz., "portable electric lamps with self-contained electrical source * * *", as is involved in the present case. The evidence in *Amico* established that the so-called flashlights were not usable as a source of light for practical illumination, but were chiefly used as playthings by children for their amusement. On the basis of those facts, Judge Maletz held that the articles in question were improperly classified by the Government as flashlights, and were properly dutiable as toys.

Obviously, then, the negligible illuminating capacity of the articles in *Amico* was a critical circumstance in determining whether they were properly classified as portable electric lamps (flashlights) under item 683.70, TSUS.

In light of the rationale applied by the courts in *Ross Products* and *Amico*, I must reject defendant's contention that a device that emits light is a "lamp," no matter how negligible the illumination produced by the article.

Additionally, plaintiff's contention that the term "lamp" connotes practical illuminating capacity outside of the article itself is supported by the testimony of *defendant's* witness, who testified that a lamp is "a practical source of light for practical purposes" (R. 70). This definition agrees with that of plaintiff's witness, who stated that a lamp is an illuminating article which provides artificial light for reading, working, and other purposes (R. 14). Respecting illuminating capacity, defendant's witness admitted that battery-powered articles, such as those before the court, have only one or two candlepower, whereas a.c. powered conventional fiber optic lamps have a candlepower 10 to 100 times greater. Further, defendant's witness confirmed that the decorative features of the imports are their main selling point rather than the negligible illumination they could provide in an emergency; and the witness readily distinguished the imports from conventional a.c. 120-volt fiber optic lamps which are covered by Underwriter Laboratories specifications [3] and building codes.

---

[3] The fiber optic lights listed with the Underwriters Laboratories are the line voltage, a.c., 120-volt type which is plugged into an electrical wall outlet.

In sum, plainly the imports are not comparable in illuminating capacity to the fiber optic lights operated by a.c. current, which the Government apparently had in mind in classifying the instant merchandise as lamps. In this connection, it must be emphasized that the issue here is not whether fiber optic lights as a class are "lamps," but whether the specific merchandise in the case falls within that term.

In support of its argument that the common meaning of the term "lamp" embraces the subject merchandise, defendant cites *United States* v. *Morris Friedman & Co.*, 63 CCPA 5, C.A.D. 1156, 524 F. 2d 745 (1975). ln that case, the issue was whether certain illuminating articles (viz, candlesticks, candleholders, menorahs, lanterns, and sanctuary lamps) which use candles as an illuminant were classifiable as lamps under item 653.35, TSUS. There was no dispute that the articles in question were illuminating devices, and the appellate court held that the common meaning of the term "lamp" (viz, device for furnishing artificial light) included candleholders. Clearly, the issue presently before me was not before the court in *Morris Friedman*.

Concerning whether the imports fall within the common meaning of the term "lamp" (as enuciated in *Morris Friedman, supra*), defendant's witness testified on direct examination (R. 63, 65):

Q. Then you agree that they [plaintiff's exhibits 1 and 2 and defendant's exhibit A] are lamps within that definition [* * * a device for furnishing artificial light * * *]?
A. *Not necessarily.* [Italic added.]
Q. In what manner do you disagree?
A. Because there is no industry standardization as to what is a lamp * * *.

* * * * * * *

Q. Can you tell me, when you market fiber optic lights, what you call them?
A. I have to ponder over that.

* * * * * * *

Q. Well, do you ever call them lamps when you are selling fiber optic lights?
A. We call them fiber optic lights.
Q. Do you ever call them lamps?
A. We have *some* models that are lamps. [Italic added.]

It is evident from the testimony of defendant's witness that he did not consider all fiber optic lights to be lamps, and that the term "lamps" would apply only to those articles that have the capacity to provide a practical source of illumination (R. 70).

Turning now to the factual issue of whether the imports could provide practical illumination for reading or navigation, as urged

by defendant, the samples themselves are potent witnesses. *Cf. Amico, Inc., supra; The Ashflash Corporation* v. *United States,* 76 Cust. Ct. 112, 120, C.D. 4643, 412 F. Supp. 585 (1976). The demonstration at the trial, as well as a further examination in chambers of the lighted samples (exhibits 1 and A) in a darkened room, disclose that it is possible to read with the illumination provided by the articles. But it is obvious from their negligible illuminating capacity that the articles are not normally used for reading, and defendant's witness so conceded (R. 71, 76). Also, my examination of the lighted articles in a darkened room convinces me that they would be virtually useless for navigation; and the contrary testimony of defendant's witness on this point (R. 74–75) is not credible. While the imports conceivably could be used as night-lights (as they are represented on their containers), the negligible outside illumination provided by the articles and the very limited life of batteries make the usefulness of the imports even as night-lights very tenuous.[4] The short of the matter is that the imports are novelty articles which makes use of light to enhance their decorative effect, and in glowing in a darkened room give off a small degree of illumination in the immediately surrounding area. However, such illumination is purely incidental to the use of the imports as decorative articles, and is inadequate for any practical use.

Plaintiff has overcome the presumption of correctness attaching to the district director's classification of the merchandise under item 683.80, TSUS. As in *Ross Products, supra,* the present articles—lighted decorative items—should be classified on the basis of their electrical characteristics rather than the light they furnish. Excepting its contention that the articles are properly dutiable under item 683.80, which classification I have found erroneous, the Government does not challenge plaintiff's claim for classification as electrical articles, n.s.p.f. in item 688.40, TSUS. Morever, the imports are undoubtedly electrical articles and the basket provision for electrical articles in item 688.40, TSUS appears applicable. Consequently, plaintiff's claim is sustained.

Judgment will be entered accordingly.

---

[4] The imports are quite different from portable battery-operated night-lights "designed to light automatically when lifted off a surface and switch off when set down again," which are designed to be carried around for intermittent use like a flashlight. See "Summaries of Trade and Tariff Information," schedule 6, vol. 10 (1969), p. 216; *Janex Corp.* v. *United States,* 80 Cust. Ct. 146, 156–57, C.D. 4748 (1978).