(C.D. 3882)

BRITISH AUTO PARTS, INC. *v.* UNITED STATES
TED L. RAUSCH

United States Customs Court, Second Division

(Decided September 11, 1969)

*Glad & Tuttle* (*George R. Tuttle* of counsel) for the plaintiffs.
*William D. Ruckelshaus,* Assistant Attorney General (*Sheila N. Ziff* and *Peter Jay Baskin,* trial attorneys), for the defendant.

Before RAO, FORD, and NEWMAN, Judges

RAO, Chief Judge: The merchandise involved in this case consists of automobile dimmer switches and stop light switches which were classified under item 685.90 of the TSUS, as "electrical switches, relays * * *, and other electrical apparatus for making or breaking electrical circuits" and assessed with duty at the rate of 17.5 per centum ad valorem.

The plaintiffs contend that the dimmer light switches and the stop light switches are dutiable under the provisions of item 683.65 of the TSUS, as electric lighting equipment designed for motor vehicles, at the rate of 8.5 per centum ad valorem.

All other claims in the protest have been abandoned.

The pertinent provisions of the Tariff Schedules of the United States read as follows:

Classified under:
Schedule 6, Part 5, Tariff Schedules of the United States:

685.90    Electrical switches, relays, fuses, lightning arresters, plugs, receptacles, lamp sockets, terminals, terminal strips, junction boxes and other electrical apparatus for making or breaking electrical circuits, for the protection of electrical circuits, or for making connections to or in electrical circuits; switchboards (except telephone switchboards) and control panels; all the foregoing and parts thereof_____    17.5% ad val.

Claimed under:
Schedule 6, Part 5, Tariff Schedules of the United States, as amended by Public Law 89–241:

683.65    Electric lighting equipment designed for motor vehicles, and parts thereof _____    8.5% ad val.

The record in this case consists of the testimony of one witness and two exhibits introduced into evidence by the plaintiffs. Plaintiffs' illustrative exhibit 1 (hereinafter referred to as exhibit 1) is illustrative of the imported headlight switch used to raise and lower the headlight beam. Plaintiffs' illustrative exhibit 2 (hereinafter referred to as exhibit 2) is illustrative of the imported stop light switch used at the end of the master brake cylinder which, when pressure is applied to the brake pedal, makes a connection and turns on the brake lights.

Mr. Peter Knowles testified that he is the secretary-treasurer of British Auto Parts, Inc., which company is in the business of importing parts for foreign cars such as the Alfa Romeo and Volkswagen, and that he is the president of its subsidiary, European Parts Exchange, which remanufactures clutches, brake shoes, etc., for foreign-made cars.

He stated that he was familiar with both of the exhibits herein and has seen them sold and in use and has supervised their overall installation in a shop other than his own. He explained that exhibit 1 is a dimmer switch for raising and lowering the beam on the headlights of Volkswagen automobiles and that it is mounted on the floor usually in the upper left area of the floorboard; that when it is pressed by foot it can make the headlights beam brighter or dimmer and that it had no other function. He testified that exhibit 2 is a stop light switch which is placed at the end of the brake master cylinder and when pressure is

applied to the brake pedal of a car, a certain amount of fluid goes into the switch and makes a connection, which turns on the brake lights. He stated that exhibit 2 has no other function and that it is used only with Volkswagen automobiles.

On cross-examination the witness testified that exhibits 1 and 2 are electrical switches and that they are shown and listed in his company's catalogues as switches.

It is plaintiffs' contention that the involved merchandise falls within the common meaning of the term "electric lighting equipment" designed for motor vehicles as used in item 683.65 and that the term "equipment" as heretofore judicially construed embraces the articles at bar.

In support of its argument that both articles fall within the common meaning of the term "electric lighting equipment," plaintiffs urge that the record establishes that both switches are exclusively used for motor vehicles in connection with lighting and then direct our attention to the following cases in which the term "equipment" was judicially construed.

In *H. E. Warner, Trustee, American Mail Line, Ltd.* v. *United States*, 28 CCPA 143, C.A.D. 136 (1940), the issue before the court was whether certain articles of crockery such as plates and cups and saucers used on a seagoing vessel were embraced by the term "equipment" as used in section 466 of the Tariff Act of 1930.

The appellate court in holding that Congress intended to include such articles within said statute, stated:

> Generally the "term 'equipment' includes the necessary adjuncts of a service and imports the outfit needed or required to accomplish a special object or purpose." See *Cruger's (Inc.)* v. *United States*, 12 Ct. Cust. Appls. 516, 518, T.D. 40730, and cases therein cited.

In the *Cruger* case, *supra*, one of the issues involved the construction of the words "other equipment" as used in paragraph 1402 of the Tariff Act of 1922. This provision provided for certain named balls, "and all other balls * * * designed for use in physical exercise or in any indoor or outdoor game or sport, and all clubs, rackets, bats, or other equipment, such as is ordinarily used in conjunction therewith in exercise or play, * * *." The question to be resolved was whether the term "other equipment" as used therein, was to be limited in scope to such articles as are ordinarily used to hit or propel the ball or so construed as to embrace inanimate objects ordinarily used and needed or required for the safe, proper and efficient playing of any indoor or outdoor ball game or sport.

The controverted articles in that case were polo caps and polo helmets. The court, while finding that these articles were not embraced by the provisions of paragraph 1402, *supra*, for other reasons, held that

the term "other equipment" as used in said statute includes all necessary articles used with balls for physical exercise or for the playing of any indoor or outdoor game or sport, and, in the course of its decision stated:

> The word "equipment" means things or supplies needed for a specific purpose or service. * * * The term "equipment" includes the necessary adjuncts of a service and imports the outfit needed or required to accomplish a special object or purpose.—*Rubey* v. *Coal & Mining Co.* (21 Mo. Appls. 159, 169); *People* v. *St. Louis, Alton & Terre Haute Railroad Co.* (176 Ill. 512, 522); *National Bank* v. *G.C. & S.F. Ry. Co.* (95 Tex. 176, 183); *Oppenheimer* v. *Greencastle School Tp.* (164 Ind. 99, 103); *United States Rubber Co.* v. *American Bond Co.* (86 Wash. 180, 182). * * *

Based on the foregoing, the plaintiffs argue that both of the switches involved herein are necessary adjuncts to the lighting system of the automobile and therefor fall within the common meaning of the term "equipment" as hereinabove judicially construed.

The defendant, on the other hand, contends that the imported switches do not fall within the common meaning of the term "electric lighting equipment" and cites the following lexicographic and other sources which discuss that term.

Summaries of Trade and Tariff Information (1969), Schedule 6, Volume 10 at pages 209 and 210 reads in part:

> This summary covers the basic electric lighting equipment used in the manufacture of motor vehicles, including both complete and partial assemblies of such equipment, and the individual parts of such equipment (except lamp bulbs, wiring, switches and sockets, and glass lenses). The following articles, among others, are considered to be basic electric lighting equipment for motor vehicles and, as such, are included herein: *Headlights, directional lights* when combined with other lighting equipment, *parking lights, brake lights, backup lights, luggage compartment lights, glove compartment lights, instrument panel lights,* and *interior passenger lights.* * * *

> The most common individual parts of motor-vehicle lighting equipment observed in international commerce are housings, bezels, and plastic lenses. * * *

> * * * Lamp bulbs * * *, switches and sockets (items 685.90 * * *), and wiring * * * imported separately for use *in* motor-vehicle lighting equipment are covered in separate summaries in volume 6:11. [Emphasis added.]

*Pender & Delmar, Electrical Engineers' Handbook* (4th ed. 1953) at page 17–83 reads:

### 18. Lighting Equipment

Lighting equipment on most automotive vehicles includes not only equipment legally required in most states, such as *head-*,

*tail-*, and *license-plate lamps*, but numerous supplementary *lamps* for the instrument panel, car interior (dome), and others. * * * [Emphasis added.]

In view of the foregoing, argues the defendant, the common meaning of the term "electric lighting equipment" embraces only lamp lights or bulbs and those items which immediately and directly support or encase the light source, and does not include articles such as switches.

While factually the issues in the cited cases are vastly different from what is here involved, it cannot be denied that our appellate court's determination that "generally the 'term "equipment" includes the necessary adjuncts of a service and imports the outfit needed or required to accomplish a special object or purpose,'" expresses the sense in which the word "equipment" is commonly understood. To what extent that meaning is here applicable is the question to which we must now address ourselves.

It is apparent from the discussion of item 683.65 in the Summaries of Trade and Tariff Information hereinabove quoted, that in a general sense, and in the absence of a contrary indication of congressional intent, the term "electric lighting equipment" might well embrace such items as switches.

However, as we have observed in the case of *Robert Bosch Corp., Arthur J. Fritz & Co.* v. *United States*, 63 Cust. Ct. 96, C.D. 3881, decided concurrently herewith, so to construe the term does not comport with what we believe Congress intended when it provided for electric lighting equipment for motor vehicles. In the final analysis it is the intention of Congress which governs the construction of the language which it has enacted. *United States* v. *Clay Adams Co., Inc.*, 20 CCPA 285, T.D. 46078 (1932); *United States* v. *S. H. Kress & Co.*, 46 CCPA 135, C.A.D. 716 (1959).

In the *Bosch* case we considered that inasmuch as it was apparent from Senate Report No. 530 on H.R. 7969, the Tariff Schedules Technical Amendments Act of 1965, Public Law 89–241, that Congress was providing in the new item 683.65 for articles previously dutiable at the rate of 19 per centum ad valorem, which rate we determined was applicable to illuminating articles in item 653.40 TSUS, we did not believe that Congress was legislating a new classification for electrical switches theretofore dutiable under item 685.90 at the rate of 17.5 per centum ad valorem.

In so concluding we also adverted to the Explanatory Notes to the Brussels Nomenclature, Volume III, item 85.09, pages 937–938, wherein it was apparent that the term "lighting equipment for motor vehicles was confined to the illuminating portions of a lighting system and did not embrace the wiring and switch assemblies that controlled the electrical current.

We then stated:

> An intent to limit the scope of the phrase "lighting equipment designed for motor vehicles" to articles which have the capacity to illuminate, such as lamps, as distinct from articles which control the flow of electrical current, such as switches, is also discernible in the description of the types of articles termed "illuminating articles" in the Tariff Classification Study, Schedule 6, part 3, page 203 (1960), Explanatory Notes for items 653.30–653.40.

We find no compelling reasons here to depart from that conclusion, or from our view that switches are not lighting equipment, per se. They are, at best, only parts thereof, which under the mandate of General Interpretative Rule 10(ij) must be classified within the specific provision for switches. All claims in the protest are, therefore, overruled.

Judgment will be entered accordingly.