(C.D. 4433)

Oxford International Corp. *v.* United States

(Decided June 14, 1973)

*Allerton deC. Tompkins* for the plaintiff.

*Harlington Wood, Jr.*, Assistant Attorney General (*John V. Henry* and *David B. Greenfield*, trial attorneys)', for the defendant.

RE, Judge: This case presents for adjudication the proper tariff classification of merchandise invoiced as "Chrome Hornlite, Squarehead", model numbers 775W and 776W, which was entered at the port of New York in 1969. The articles were classified under item 732.36 of the Tariff Schedules of the United States (TSUS), as modified by Presidential Proclamation 3822, T.D. 68–9, as—

"Parts of bicycles:

\* \* \* \* \* \* \* '

Other parts of bicycles"

and were assessed with duty thereunder at the rate of 24 per centum ad valorem.

Plaintiff does not deny that the horn-lights at bar are parts of bicycles, but contends that the articles are also electrical "sound or visual signalling apparatus" within the meaning of item 685.70, TSUS, as modified by T.D. 68–9, which provides for—

"Bells, sirens, indicator panels, burglar and fire alarms, and other sound or visual signalling apparatus, all the foregoing which are electrical, and parts thereof"

and carries a duty rate of 6.5 per centum ad valorem. Accordingly, plaintiff claims, the merchandise is properly classifiable under that provision by virtue of General Interpretative Rule 10(ij) which provides that—

"a provision for 'parts' of an article covers a product solely or chiefly used as a part of such article, but does not prevail over a specific provision for such part."

Defendant concedes that item 685.70 is a "specific provision" within the purview of rule 10(ij), but submits that that rule is inoperable since the merchandise at bar is not "sound or visual signalling apparatus", as claimed.

Essentially, the importations consist of battery-operated chrome-plated metal housings with a square-faced lamp at the front of the

unit, and an interior space to enclose two electric batteries (not imported with the articles). Model 776W (exhibit 1) has a push button on the rear end of the unit which emits a buzzing sound when pressed, and a switch on the side which turns on the light from a single bulb. The metal piece surrounding the bulb has a shiny reflector surface. Model 775W (exhibit 2) is similar to 776W in function and appearance [1] except that the horn portion is operated by a switch connected by wires to the housing, and the lamp has two bulbs which may be operated separately by turning the switch. One bulb casts a beam that is diffused, whereas the other throws a sharp beam of light straight ahead.

The horn and lamp parts of both models may be operated together or independently. The articles also come equipped with mounting bracket sets so that they may be affixed to the handlebars of bicycles. The importations, as established by the record, are designed for and are used solely on bicycles.

Each party called one witness. Plaintiff's witness was Mr. Robert Teller, vice president and sales manager of the plaintiff corporation, which imports and distributes bicycle accessories, parts and components. He testified that his company sells the horn-lights throughout the United States to dealers, chains and distributors, but has no connection with retail sales. He has seen the horn-lights, which are used only on bicycles, in use throughout the United States and observed their operation in the evening. The horn, he stated, is used as a signal to warn pedestrians of an approaching bicycle. The lamp portion is used in the evening—

> "* * * for visual means, and again for oncoming vehicles or pedestrians that they can see this light. The problem with the lamp is that it cannot be used by the person riding this bicycle as a visual item. It does not give enough brightness to it."

It is "[s]trictly a warning that there is something there." A bicyclist "would buy another type light" to illuminate his pathway at night.

Mr. Teller testified that the lights on both exhibits can be seen at a distance of at least 500 feet, and that the horn, in his opinion, can be heard at least 100 feet away. The primary function, in his experience, of a bicycle headlight, as well as of the lights in exhibits 1 and 2, is as "a warning, signalling".

The witness, who rides a bicycle in the early evening when a light is not required, stated that he does not use a horn-light but that he has used a "separate horn". He agreed that his testimony as to the use

---

[1] Exhibits 1 and 2 are identical to the imported items except that they have a round face instead of a square face or "square-head" as noted on the invoice.

of the articles at bar was based solely on having seen them used by others.

Defendant's witness, Mr. Milton Morse, an experienced bicyclist for over 50 years, a member of bicycling clubs and an instructor on safety to bicyclists, testified that he has bicycled in the dark hours using headlamps, and that a bicyclist must observe the same rules and regulations that apply to automobiles and motorcycles. Mr. Morse also expressed the view that if he were cycling on the left side of the road facing traffic he would want a headlight of equal intensity to that of a motorized vehicle and which would conform in all respects to the latter's headlights. Although the witness conceded that he was totally unfamiliar with the articles at bar, he stated that he would not consider the horn on illustrative exhibit 1 sufficiently loud to warn an oncoming motorist of his presence, whereas exhibit A, a non-electric horn, is an effective warning device for use on bicycles. He agreed that the horn portions of exhibits 1 and 2 are electrical signalling devices.

The presumption of correctness attending the regional commissioner's decision as to classification attaches to every subsidiary fact necessary to support that classification. *United States* v. *New York Merchandise Co.*, 58 CCPA 53, C.A.D. 1004, 435 F. 2d 1315 (1970); *Novelty Import Co., Inc.* v. *United States*, 53 CCPA 28, C.A.D. 872 (1966). Thus, his decision herein carries with it the presumptively correct finding that the merchandise at bar is something other than the sound or visual signalling apparatus specifically provided for in item 685.70. The basis therefor, as advanced by defendant, is that, while the horn portion of the imported horn-lights is admittedly a sound signalling device, the lamp portion functions primarily as an illuminating device, thus making the article something "more than" the signalling apparatus provided for in item 685.70. The defendant therefore contends that the merchandise does not come within the claimed provision.

It is settled that a combination or multifunction article is not classifiable for tariff purposes under a specific statutory provision describing only one of those features or functions as the importation is more than the article described therein. As stated by the court in *Robert Bosch Corp. et al.* v. *United States*, 63 Cust. Ct. 96, 103–104, C.D. 3881 (1969):

> "The principle is well settled that where an article is in character or function something other than as described by a specific statutory provision—either more limited or more diversified—and the difference is significant, it cannot find classification within such provision. It is said to be more than the article described in the statute. *Cragston Corporation* v. *United States*, 51 CCPA 27, C.A.D. 832 (1963); *United States* v. *The A.W. Fenton Company, Inc.*, 49 CCPA 45, C.A.D. 794 (1962); *Garrard Sales Corp.* v.

*United States, supra* [35 CCPA 39, C.A.D. 369 (1947)]; and *Hirsch & Co. et al,* v. *United States,* 4 Ct. Cust. Appls, 82, T.D. 33365 (1913)."

The foregoing statement was expressly cited and relied upon by the court in *Dollar Trading Corp.* v. *United States,* 67 Cust. Ct. 308, C.D. 4290, 349 F. Supp. 1395 (1971). The opinion in the *Dollar Trading Corp.* case was affirmed and adopted by the Court of Customs and Patent Appeals as its own. *Dollar Trading Corp.* v. *United States,* 60 CCPA 10, C.A.D. 1074 (1972). See also *United States* v. *ACEC Electric Corp.,* 60 CCPA 113, C.A.D. 1091 (1973); *Fedtro, Inc.* v. *United States,* 59 CCPA 16, C.A.D. 1028, 449 F.2d 1395 (1971). Accordingly, if the light portion of the articles at bar serves primarily to illuminate, rather than to signal, as the defendant contends, the importations are more than the sound or visual signalling apparatus described in item 685.70 and are precluded from classification thereunder.

With respect to the horn portion of the merchandise, the court agrees that it is a sound signalling device. In *S. Hiller & Co., et al.* v. *United States,* 59 Cust. Ct. 79, 80–81, C.D. 3082 (1967), involving the classification of battery-operated cycle horns under the Tariff Act of 1930, the court, stating that common meaning controls the classification of merchandise for customs duty purposes, cited the following dictionary definitions of "signal" and "electric horn":

Webster's New International Dictionary, second edition, 1958:

"electric horn: A device for producing sound signals, consisting of a diaphragm which is vibrated by an electric motor or a simple electromagnet, and an enclosing funnel which directs the sound resulting from the vibrations of the diaphragm."

"signal n. * * * 4a. A sign made to give notice of something, as of a command or danger; as, a *signal* to fire. * * *"

"signal, adj. * * * 3. Employed or used in signalling; * * *"

"signal v. 1. To communicate by signals; * * *2. To notify by a signal or signals; * * *."

Funk & Wagnalls New Standard Dictionary of the English Language, 1956:

"signal, v. * * * 2. To communicate by means of signals; loosely, to serve as a sign of; as, to *signal* the arrival of a ship; to *signal* danger."

"signal n. 1. A sign agreed upon, understood, or designed to be understood, and used to convey information, especially at a distance; a means of communication by audible or visible signs, generally adopted according to a preconcerted system; often given by displaying a flag by day or a light by night, or by sounding a bugle or horn, * * *." [Emphasis in original.]

The court noted that under the foregoing definitions "a horn is a device to give notice, warning, or information by an audible sign, as an indication of an event or of danger", and that they "aptly relate[d]" to the cycle horns. Consequently, the court held that they were more specifically described, and therefore properly classifiable as, electrical signalling apparatus, instruments and devices, and parts, wholly or in chief value of metal, under paragraph 353, as modified, rather than as articles having as an essential feature an electrical element or device, wholly or in chief value of metal, also provided for in that same paragraph, as modified.[2]

In the case at bar the horn portions of the horn-lights similarly fall within the purview of the provision for electrical "sound signalling apparatus". It is a different matter, however, with respect to the lamp portions of the horn-lights.

In this case it is particularly pertinent to note the probative effect of samples in establishing the proper classification of imported merchandise. This is a principle long acknowledged by this court and by the Court of Customs and Patent Appeals. *United States* v. *The Halle Bros. Co.*, 20 CCPA 219, T.D. 45995 (1932) ; *United States* v. *New York Merchandise Co., Inc.*, 58 CCPA 53, C.A.D. 1004 (1970) ; *Wilson's Customs Clearance, Inc.* v. *United States*, 59 Cust. Ct. 36, C.D. 3061 (1967). Thus, even where testimony as to actual use is very limited, the character and design of the sample itself may compel a finding as to the primary use of the merchandise. *Leaf Brands, Inc.* v. *United States*, 70 Cust. Ct. 66, C.D. 4409 (1973).

Certainly, any light which is used on a moving object at night on a public road, and is visible for more than a few feet, may be said to be a signal to the extent that it notifies others of the latter's presence. But the lamps at bar do more than merely serve as a signal; they also function as illuminating devices. An examination of plaintiff's exhibits, including turning on the lights in a darkened room and outdoors at night, vividly demonstrates their capability to cast a beam of light which illuminates objects, and which can illuminate the path-

---

[2] The cycle horns, which had been classified as parts of bicycles under paragraph 371, Tariff Act of 1930, were stipulated to be similar in all material respects to the horns the subject of *G. Joannou Cycle Co., Inc.* v. *United States*, 46 Cust. Ct. 172, C.D. 2253 (1961). The latter were held to have been erroneously classified as parts of bicycles under paragraph 371 because, although chiefly used on bicycles, they were also used substantially on other vehicles, thus failing to meet the "dedication to use" test which, under judicial construction of the earlier tariff acts, was essential for classification of an article as a "part" of another article. This requirement was changed with passage of the Tariff Classification Act of 1962, P.L. 87–456, 76 Stat. 72, which provides that a provision for "parts" of an article covers a product solely or chiefly used as a part of such article. General Interpretative Rule 10(ij).

While defendant, in *Hiller*, had in effect conceded error, it nevertheless contended that the horns were properly classifiable as articles having as an essential feature an electrical element or device.

way of a bicyclist at night. Indeed, the two separate beams of light cast by the light bulbs in model 775W clearly refute the testimony of the plaintiff's witness who attempted to minimize the illuminating function of the horn-lights. A careful examination will leave no doubt that the lamp portions of the horn-lights function primarily as illuminating articles. Furthermore, the reflector portion of the lamps serves to enhance their illuminating capacity. Consequently, the court is compelled to conclude that the horn-lights possess an important illuminating feature at least coequal to their signalling function, thus making them more than signalling apparatus.

The statements of plaintiff's witness that the horn-lights are used only to signal, and that the lamp portions do not sufficiently illuminate the area for a rider are of little weight as they are not based on personal knowledge but on their alleged uses by third persons. Admittedly, the witness has never used the articles nor bicycled at night. Furthermore, although the witness claimed that he had seen the horn-lights in use on bicycles at night, there is absolutely no testimony that he had ever seen additional lights used on these same bicycles after dark. How the bicyclists were able to see in the dark if not from the beam cast by the horn-light is nowhere explained. It is also noted that his company sells these articles to chains and distributors, not to the ultimate consumer. Accordingly, having no personal familiarity with the use of the merchandise, his testimony is insufficient, in the face of the overwhelming evidence of the samples themselves, to overcome the presumption of correctness which attaches to the classification.

The lights portion of the horn-lights at bar, which casts a steady continuous beam when turned on, is readily distinguishable in function and purpose from the 4-way flasher switches which were held, in *Fedtro, Inc.* v. *United States*, 59 CCPA 16, C.A.D. 1028, 449 F.2d 1395 (1971), to be properly classifiable under TSUS item 685.70 as parts of signalling apparatus. The switches in the *Fedtro* case were used to connect the front and back signal lamps of an automobile with the flasher circuit for the directional signals in such a manner that all four lamps flashed simultaneously. Thus, as the court observed, they formed part of an "emergency flasher system [which] is 'signalling apparatus' under even the most restrictive definition." 59 CCPA at 19. See also, by way of contrast, *Astra Trading Corp.* v. *United States*, 56 Cust. Ct. 555, C.D. 2703 (1966), wherein it was held that a "Flashlight Tool," consisting of a screwdriver with an illuminating feature, was not more than a screwdriver since the illuminating feature did not give the article a use in addition to its intended use as a screwdriver.

Inasmuch as the court finds that the horn-lights at bar are more than sound or visual signalling apparatus in that they are also illuminating devices, plaintiff's claim for classification under item 685.70 cannot be upheld.

While the dismissal of plaintiff's claim in effect sustains the classification, it is appropriate to note that the evidence of record and the established case law support the action of the customs officials in finding that the horn-lights were parts of bicycles for tariff purposes.

Bicycle lamps operated by electric generators and used as illuminating lights for bicycles operated at night were held properly classifiable under the Tariff Act of 1930 as parts of bicycles as the lights were essential and necessary to their operation. *Eric Wedemeyer* v. *United States,* 7 Cust. Ct. 141, 143, C.D. 556 (1941).

More recently, the Court of Customs and Patent Appeals held in *Victoria Distributors, Inc.* v. *United States,* 57 CCPA 76, 80, C.A.D. 979, 425 F.2d 759, 762 (1970), that "battery-operated horn-light combinations" were properly classifiable as parts of bicycles under paragraph 371 of the Tariff Act of 1930 as they were dedicated to use on bicycles and contributed to their "safe and efficient operation". The horn-lights in the *Victoria Distributors* case apparently are very similar to the articles at bar. The court therein described them as consisting

> "* * * essentially of chrome-plated metal enclosures, with a place for electric batteries inside, and a head lamp at the front end. A wire extends from the device to a push button which is used to operate the horn element of the article. The device has clamps, screws and nuts for mounting, for example, on handlebars, and finds use primarily in conjunction with bicycles." 57 CCPA at 78.

For a brief review of the law pertaining to parts, see *Vilem B. Haan et al.* v. *United States,* 67 Cust. Ct. 104, C.D. 4260 (1971), and *Warshawsky & Company* v. *United States,* 70 Cust. Ct. 75, C.D. 4410 (1973).

There can be no doubt that the horn-lights in the present case contribute to the safe and efficient operation of bicycles by virtue of their illuminating and signalling functions. Indeed, it has been noted that many states require bicycles to be equipped with bicycle lamps for their safe and proper operation at night. See *Eric Wedemeyer* v. *United States,* 7 Cust. Ct. 141, C.D. 556 (1941).

It is the determination of the court that the horn-lights at bar were properly classified as parts of bicycles under item 732.36 of the tariff schedules. The claim for classification under item 685.70 is therefore overruled. Judgment will issue accordingly.