OXFORD INTERNATIONAL CORPORATION *v.* UNITED STATES

Court Nos. 66/74958, etc.

(Decided August 27, 1975)

*Allerton deC. Tompkins* for the plaintiff.
*Rex E. Lee*, Assistant Attorney General (*Patrick Gill* and *Andrew P. Vance*, trial attorneys), for the defendant.

RE, Judge: The question presented in this case pertains to the proper classification, for customs duty purposes, of certain merchandise manufactured in and imported from Hong Kong. The merchandise consists of three kinds of bicycle taillights invoiced as "Oxford Brand Aluminum Tail Lites #155RJ", "Plastic Tail Lites #156", and "Cycle Direction Signal Tail Lites #140".

The merchandise was classified under item 653.40 of the Tariff Schedules of the United States (TSUS) as:

"Illuminating articles and parts thereof, of base metal:

\*       \*       \*       \*       \*       \*       \*

    Other:

\*       \*       \*       \*       \*       \*       \*

        Other"

and was consequently assessed with duty at the rate of 19 per centum ad valorem.

Plaintiff contests the classification, and claims that the taillights are not illuminating articles, but rather, electrical visual signalling devices classifiable under item 685.70 of the tariff schedules which provides for:

"Bells, sirens, indicator panels, burglar and fire alarms, and other sound or visual signalling apparatus, all the foregoing which are electrical and parts thereof".

Hence, plaintiff contends that the proper and legal rate of duty should be only 8.5 per centum ad valorem.

Alternatively, plaintiff claims that, if the court finds the subject merchandise to be neither illuminating articles nor electrical visual signalling devices, then the articles are properly classifiable under item 688.40 (TSUS) as:

"Electrical articles, and electrical parts of articles, not specially provided for"

with duty at the rate of 11.5 per centum ad valorem. A second alternative claim under item 657.35 (TSUS) has been withdrawn and, therefore, need not be considered.

Defendant concedes that the "Cycle Direction Signal Tail Lites #140" have been erroneously classified, and that they should have been properly classified under item 685.70. No discussion is, therefore, necessary as to these articles, and judgment will be issued accordingly.

Defendant, however, denies the validity of plaintiff's claims as to the "Oxford Brand Aluminum Tail Lites #155RJ", and the "Plastic Tail Lites #156", and maintains that they have been correctly classified.

Essentially, the controverted bicycle taillights consist of cylindrical casings with red-tinted circular lamps at the rear. Each lamp contains a miniature bulb surrounded by a shiny surfaced metal plate encased in a red plastic prism or lens. Inside each casing is a space for a single electric battery (not imported with the article), and a metal spring. The primary difference between the #156 (plaintiff's exhibit 1), and the #155RJ (plaintiff's exhibit 2) is that in the former, the casing is of plastic, while in the latter, it is of aluminum. At the bottom of each taillight unit is a metal mounting bracket which is used to attach the taillight to the rear frame or fender of a bicycle.

The taillights become "effective", i.e., emit a red light, when they are turned on manually. To turn on exhibit 1, the rear lens portion is turned to the right. To turn on exhibit 2, the front end is turned to the right. When the bulb is thus lit, the light is reflected from the metal surface.

In addition to plaintiff's illustrative samples, and two exhibits submitted by defendant, the record consists of the testimony of three witnesses, two for plaintiff and one for defendant. Plaintiff's first witness was Mr. Arthur Lipski, president and general manager of plaintiff corporation, whose business is the importation and distribution of bicycle parts and accessories. Mr. Lipski is responsible for the

purchase and distribution of the taillights throughout the United States. He testified that he has seen them in use throughout the United States, and has observed their operation in the evening.

Mr. Lipski testified that, for safety reasons, ordinances require that bicycles be equipped with either "reflectors" or taillights to warn oncoming vehicles of the presence of a bicycle. He stated that the lamp portion did not make the taillights more than warning devices; it merely made them more effective warning devices. He explained:

> "[the shiny metal surface surrounding the bulb was] designed to catch any reflections whether or not the battery was in operation. This is similar to a regular reflector that you might put on a bicycle; we now illuminate it with the use of a battery."

Moreover, he stressed that the taillights cannot be used to illuminate other objects. When challenged on cross-examination, he stated that the only portion of a bicycle illuminated by them is a portion of the rear fender—which is only visible for a short distance.

The testimony of plaintiff's second witness, Mr. Robert Teller, sales manager of plaintiff corporation, substantiated the points made by Mr. Lipski. In particular he stated that the taillights are attached to the "rear fork sections of the bicycle, facing to the rear" in order:

> "to warn automobiles in back that there is a bicycle, a rider in front of them. It's self-illuminating and the reflectorized light gives that signal, that warning signal that there is somebody ahead on, on a bicycle."

Further, he stated that without the bulb, the taillights will act as "reflectors" and reflect automobile headlights a distance of 75 to 100 yards back.

Defendant's witness, Mr. Charles Bishop explained the differences between the taillights at bar, and "reflectors" (defendant's exhibit A), and the similarities between the present taillights and articles called combination headlights (defendant's exhibit B). Mr. Bishop's expertise was based on his observation of their use throughout the United States, and the following qualifications: President of Bright Star Industries, Incorporated, which manufactures dry cell batteries, flashlights, and bicycle reflectors; president of Kent Energy Corporation, a subsidiary of Bright Star Industries, which imports batteries, lanterns, and flashlights; member and past chairman of the National Electrical Manufacturers Association; member of the American National Safety Institute, which writes battery and flashlight specifications; and past director of the Bicycle Institute of America.

Mr. Bishop testified that defendant's exhibit A is a highly technical item, and stated:

"it's a crysmatic reflector, molded with pins, so that light, when it hits the surface; goes through; is bent in different directions by the pins in the back and reflected back into the light source, and also out at twenty degree angles in all directions."

He further testified that it has no self-contained energy source. Moreover, industry specifications require that it be able to reflect light back 600 feet in a "volume visible in the low beams of an automobile." He also stated that articles such as plaintiff's exhibits 1 and 2 do more than reflect, they:

"will illuminate, to a certain extent, light out to a 90 degree angle; perhaps small portions of the rear of the bicycle and the ground; and depending upon the bulb, or miniature lamp which is used, this light could be increased or decreased."

The witness then analogized the operation of plaintiff's exhibits to that of defendant's exhibit B, a combination headlight and taillight. Exhibit B is similar in appearance and method of operation to plaintiff's exhibits, and is also used at night. The primary difference is that defendant's exhibit is equipped with a clear lens, as well as a red lens, thereby enabling it to function as a headlight as well as a taillight. Exhibit B is considered by the witness to be an illuminating article. Further, he declared that both the battery and bicycle industries would also consider plaintiff's exhibits to be illuminating articles.

The presumption of correctness that attaches to the classification of the district director of customs requires no extended discussion. Suffice it to say that the presumption attaches not only to the ultimate conclusion of the customs official, but also to all subsidiary facts found in support of that conclusion. *United States* v. *New York Merchandise Co., Inc.*, 435 F. 2d 1315, 58 CCPA 53, C.A.D. 1004 (1970). By virtue of the presumption the burden of proof is upon the one who contests the director's classification. Hence, the plaintiff must disprove the correctness of the classification, and establish the correctness of its own claim.

The basic question, therefore, is whether the controverted taillights are "illuminating articles" within the meaning of item 653.40, TSUS. If plaintiff has not established that the headlights are not illuminating articles it cannot prevail for it has not succeeded in proving that the classification of the customs official is erroneous.

Since the record does not establish a commercial designation for the words "illuminating articles" the common and ordinary meaning must control. *Swan* v. *Arthur*, 103 U.S. 597, 598 (1881); *United States* v. *Victoria Gin Co., Inc., et al.* 48 CCPA 33, 35, C.A.D. 759 (1960);

*Borneo Sumatra Trading Co., Inc.* v. *United States*, 64 Cust. Ct. 185, 188, C.D. 3980 (1970).

The meaning of "illuminating articles" encompassed by item 653.40, TSUS, was examined by the Court of Customs and Patent Appeals in *Ross Products, Inc.* v. *United States*, 433 F. 2d 804, 58 CCPA 1, C.A.D. 994 (1970). In the *Ross* case, the question presented was whether certain decorative planters, in the form of simulated bird cages containing a number of plastic roses with small electric bulbs inside, were properly classified under item 653.40. For guidance, the court looked to *United States* v. *General Display Case Co., Inc.*, 21 CCPA 542, C.A.D. 3708 (1934), a case decided under paragraph 218(c) of the Tariff Act of 1930, which dealt with articles used "in connection with artificial illumination". In the *General Display* case, before finding that "hollow cylindrical glass units with colored decalcomania" were not within paragraph 218(c), the court stated:

> "the provision for illuminating articles to be used in connection with artificial illumination includes only such articles as are chiefly used in connection with artificial illumination for illuminating purposes. If they are chiefly used for some other purpose * * * and if the illumination provided by them is minor and incidental, only, to their chief use, and [the articles] are not intended for or used for the purpose of illuminating the surrounding atmosphere, then they should not be classified as illuminating articles, under said paragraph 218(c)." 21 CCPA at 546.

Applying the foregoing reasoning to item 653.40 of the tariff schedules, the court, in the *Ross* case, stated:

> "that the use of the articles is a significant factor in item 653.40 * * * [and, that] in order to serve as an 'illuminating article', the article must be used to 'light up' something other than itself." 58 CCPA at 4–5.

Thus, considering the facts of record in *Ross*, the court concluded that the decorative planters were not illuminating articles but:

> "basically decorative articles * * * useful as decorations in lighted areas as well as in the dark with their bulbs unlighted as well as lighted. The function of the lights is to enhance the decorative effect of the articles by serving as a part of the artificial flowers as well as by furnishing illumination to the articles themselves. Any lighting of the surrounding space is only incidental to the use of the importations as decorative articles which may be at least partially self-illuminated." 58 CCPA at 5.

In the case at bar the defendant maintains that *Ross* sets forth a two-part definition for an "illuminating article". It submits: (1) that such an article must contain a light which when operated lights up something other than itself, and (2) is an article in which the lighting function is necessary to the article's use. The defendant, therefore,

asserts that an examination of the taillights reveals an illuminating capacity which is both critical and necessary to their operation. In its brief it states:

> "Plaintiff's exhibits have a built-in reflector but cannot reflect more than 75 to 100 yards, without the illumination of the bulb inside. This reflective capacity of the taillights is insufficient to warrant their use at night without a light bulb. The taillights are not usable, therefore, unless lighted, and this establishes the second element in the definition for "illuminating articles" in *Ross, supra.*"

The plaintiff also relies upon the holding in the *Ross* case. It, on the other hand, argues that, although the taillights must be lit in order to perform their function as warning devices, any light given off to the surrounding area is merely incidental to their primary function as electrical visual signalling devices. Moreover, plaintiff contends that the light generated by the taillights is neither designed nor used for the illumination of the surrounding area. Hence, plaintiff claims that they cannot be deemed illuminating articles within the purview of item 653.40.

The court agrees with the defendant's view of the meaning of the *Ross* case. The holding in *Ross* does not require that the primary function of the articles be as illuminating articles. Furthermore, the illumination cast by the decorative planters in the *Ross* case was incidental to their chief use because it merely enhanced the decorative effect of the articles. The planters were usable as planters in lighted as well as unlighted areas regardless of whether the bulbs were lit or unlit.

The taillights in the present case satisfy both of the requirements outlined in *Ross*. Defendant's witness attests to the fact, and plaintiff's witnesses agree, that the light cast by the taillight's bulb lights up not only the taillight, but also a portion of the bicycle and the roadway behind the bicycle. Moreover, an examination of the taillights clearly reveals their capacity *to illuminate*. When turned on in a darkened room they cast a beam of light which illuminates objects in the surrounding area. The red color of the light does not negate its ability to illuminate. It is merely the color customarily used for taillights.

That samples of imported merchandise are potent witnesses in the determination of their proper classification is a principle long accepted by this court. See *United States* v. *The Halle Brothers Co.,* 20 CCPA 219, T.D. 45995 (1932). Indeed the character and design of the sample itself may compel a finding as to the primary use of the merchandise. *Leaf Brands, Inc.* v. *United States,* 70 Cust. Ct. 66, C.D. 4409 (1973).

It is clear from the record that the lighting function is necessary to the use of the taillights. Although plaintiff contends that the taillights

can be used as warning devices with their bulbs unlit, as well as lit, in much the same manner as "reflectors" (defendant's exhibit A, for example), the court does not agree. To the contrary, the court finds that the taillights have been specifically designed for use with bulbs, and that without their bulbs lit, possess insufficient reflective capacity to be effective for their intended use.

Testimony indicates that they cannot be used as "reflectors". "Reflectors" are highly technical items capable of reflecting light back 600 feet. However, plaintiff's exhibits, when unlit, have a reflective capacity of only 75 to 100 yards. In fact, the function of the red prism appears to be largely the coloration and diffusion of the light cast by the bulb, a function far closer to that served by the red lens on the combination headlight-taillight, than the refraction and reflection of light performed by "reflectors".

As stated in *Oxford International Corp.* v. *United States*, 70 Cust. Ct. 217, 223, C.D. 4433 (1973):

> "Certainly, any light which is used on a moving object at night on a public road, and is visible for more than a few feet may be said to be a signal to the extent that it notifies others of the latter's presence. But the lamps at bar do more than merely serve as a signal; they also function as illuminating devices."

Thus, *Trans-Atlantic Co.* v. *United States*, 471 F. 2d 1397, 60 CCPA 100, C.A.D. 1088 (1973), cited by the plaintiff, has no relevance to the case at hand. In *Trans-Atlantic*, merchandise consisting of "single action spring hinges" was classified as hinges, n.s.p.f. under item 647.03, TSUS. Plaintiff-appellant argued that:

> "the device in question is 'a kind of hinge' but * * * it 'is more than a hinge'—it also closes the door and is, therefore, 'a kind of door closer' [60 CCPA at 101]";

and should be classified as a door closer under item 646.95, TSUS. The Court of Customs and Patent Appeals rejected plaintiff's argument stating that "the articles at bar are hinges within the ordinary understanding of that term" and that:

> "Improvement in the design of an article having an eo nomine classification which enables it to perform an additional function does not militate against its continuing to be a form of the named articles. Under the tariff acts, articles are classifiable on the basis of their primary design, construction and function, even though they are capable of performing other auxiliary or incidental operations." 60 CCPA at 103.

It has been clearly established that the taillights are not effective without the use of their bulbs. Illumination is not a function additional

to or separate from the primary function of the taillights. Hence, it cannot be minimized and dismissed as auxiliary or incidental.

The instant case is distinguishable from *Amico, Inc.* v. *United States*, 71 Cust. Ct. 182, C.D. 4494 (1973) also cited by plaintiff. There it was decided that articles invoiced as "Handy Clown Flashlights" were properly classifiable as toys, under item 737.90, rather than as flashlights, under item 683.70. Headnote 1 of schedule 7, part 5, subpart E, TSUS, directs that a "toy" be so classified, even if also encompassed by another provision which is more specific (e.g., flashlights). Hence, in the *Amico* case, the sole issue was whether the imported articles were chiefly used for the amusement of children.

The uncontradicted testimony in the *Amico* case indicated that the articles were usable as playthings whether their lights were lit or unlit. The purpose of the light emitted by the flashlight was the projection of a clown's smiling face image on a darkened area. It was neither intended nor used as a flashlight to illuminate. Indeed, it was useless as a flashlight. Furthermore, the tariff provision in the present case differs from those that governed the *Amico* case. Item 653.40 pertaining to illuminating articles, requires only that an article cast a beam of light whose illuminating function is necessary to the article's chief use.

It is beyond dispute that the taillights perform a function analogous to that of automobile taillights. This is significant because automobile taillights were unquestionably intended by Congress to be classified as motor vehicle lighting equipment. This is revealed by House Report No. 342, 89th Cong., 1st Sess. (1965), which accompanied the Tariff Schedules Technical Amendments Act of 1965. At page 25 of that report, it is stated:

> "Subsection (h) of Section 30 sets up a new item for lighting equipment designed for motor vehicles, and parts thereof * * *. This new item 683.65 applies principally to equipment presently covered by item 653.40 [the catchall provision covering "other" illuminating articles] * * *.
>
> "The new item will apply, for example, to headlamp assemblies consisting of sealed beam units and their frames and mountings. * * *
>
> "[However], [t]he new provision is not limited to headlight assemblies; it also covers other motor vehicle lighting equipment such as taillight assemblies and parking light assemblies."

In the *Summaries of Trade and Tariff Information* (1969), Schedule 6, Volume 10, it is indicated that the articles included in new item 683.65, the basic electrical lighting equipment used in the manufacture of motor vehicles, were drawn from articles previously classified as

illuminating devices. This court has often relied on the *Summaries* as an accurate indicia of congressional intent.

Also pertinent is *British Auto Parts, Inc.* v. *United States*, 63 Cust. Ct. 105, C.D. 3882 (1969) which includes the following definition of lighting equipment from Pender & Delmar, *Electrical Engineers' Handbook* (4th ed. 1953):

> "Lighting equipment on most automotive vehicles includes not only equipment legally required in most states, such as *head-*, *tail-*, and *license-plate lamps*, but numerous supplementary *lamps* [as well] * * *." 63 Cust. Ct. at 108–109.

Clearly, therefore, motor vehicle taillights, now classifiable under a special provision for motor vehicle lighting equipment, were formerly classifiable as illuminating articles.

In support of its position, plaintiff places much reliance upon the case of *Fedtro, Inc.* v. *United States*, 449 F. 2d 1395, 59 CCPA 16, C.A.D. 1028 (1971). In the *Fedtro* case the Court of Customs and Patent Appeals determined that the phrase "sound or visual signalling apparatus" in item 685.70, TSUS, included "four-way flasher switches" used to connect the front and rear signal lamps of an automobile with the flasher circuit for the directional signals so that all four lamps flashed simultaneously.

The appellate court found the Customs Court interpretation of "signalling apparatus" as items used "by one person to communicate with or signal to another" to be unduly restrictive insofar as:

> "It would exclude articles such as traffic signals, automatic fire alarms, and other warning devices which are commonly thought of as signalling apparatus even though they are not used by one person to communicate with or signal to another." 59 CCPA at 18–19.

Plaintiff contends that this language extended the coverage of item 685.70 to articles such as the controverted taillights. Bicycle taillights, however, which cast a steady continuous beam of light, are, as were the horn-lights in *Oxford International Corp.* v. *United States*, 70 Cust. Ct. 217, C.D. 4433 (1973), readily distinguishable from the four-way flasher switches, and the devices characterized as signalling devices by the appellate court in the *Fedtro* case. The flasher switches, parts of automobile "emergency flasher systems" are used in emergencies, such as alerting vehicles and pedestrians of the presence of a disabled vehicle. Traffic signals and fire alarms likewise function in a manner which calls attention to emergency or temporary conditions. Bicycle taillights, however, which function continuously from dusk to dawn, are not in the same category.

The doctrine of *ejusdem generis* supports the interpretation that item 685.70 encompasses only those devices whose function is to call attention to temporary or abnormal conditions. The doctrine means:

> "that where general words follow terms designating specific or particular things, persons, or subjects, the general words are to be construed as including only those things, persons or subjects which are of the same kind, class or species as those specifically enumerated." *Nomura (America) Corp.* v. *United States,* 299 F. Supp. 535, 540, 62 Cust. Ct. 524, 530, C.D. 3820 (1969), *aff'd,* 435 F. 2d 1319, 58 CCPA 82, C.A.D. 1007 (1971).

In item 685.70, the general phrase "other sound or visual signalling apparatus" is preceded by the following enumeration: "Bells, sirens, indicator panels, burglar and fire alarms". All of the named devices are activated or function in temporary or abnormal situations only. Thus, the general provision "other sound or visual signalling apparatus" must exclude articles which operate continuously, and which do not warn of the existence of emergencies or special circumstances. Taillights light up the rear end of a bicycle to make it visible to oncoming cars. Since they do not fall within the category, they are not sound or visual signalling apparatus within the ambit of item 685.70.

On the record before the court, and its study of the competing tariff provisions, the court has concluded that the taillights at bar are illuminating articles as classified by the customs officials. Inasmuch as it is the determination of the court that the subject importations have been correctly classified as illuminating articles, no further consideration need be given plaintiff's claims for classification under items 685.70 or 688.40 of the tariff schedules.

The protests are consequently overruled, except as to those articles invoiced as "Cycle Direction Signal Tail Lites #140" which are to be classified under item 685.70 of the tariff schedules.

Judgment will issue accordingly.