A & A INTERNATIONAL, INC., PLAINTIFF *v.* UNITED STATES, DEFENDANT

Court No. 81-1-00053

Before RE, *Chief Judge.*

(Decided May 10, 1983)

*Sharretts, Paley, Carter & Blauvelt (Peter Jay Baskin* at the trial and on the brief) for the plaintiff.

*J. Paul McGrath,* Assistant Attorney General; *Joseph I. Liebman,* Attorney in Charge, International Trade Field Office, Commercial Litigation Branch *(Robert H. White* at the trial and on the brief), for the defendant.

RE, *Chief Judge:* The question presented in this case pertains to the proper classification, for customs duty purposes, of merchandise invoiced as battery-operated metal detectors and exported from Hong Kong.

The metal detectors were classified under item 688.40, now item 688.43, of the Tariff Schedules of the United States (TSUS), as electrical articles not specially provided for. Consequently, they were assessed with duty at the rate of 5.5% ad valorem.

Plaintiff contends that the metal detectors are properly classifiable under item A685.70, TSUS, as other sound signalling apparatus. Therefore, plaintiff contends that they should enter duty free because they were imported from Hong Kong, a designated beneficiary developing country under the Generalized System of Preferences (GSP), General Headnote 3(c).

Alternatively, plaintiff claims that, if its primary claim is not sustained, the metal detectors are properly classifiable under item A712.49, TSUS, as other electrical measuring, checking, analyzing

or automatically-controlling instruments and apparatus, also eligible for duty-free entry pursuant to the GSP.

The pertinent statutory provisions of the tariff schedules are as follows:

*Classified by customs officials under:*

| 688.40 | *Electrical articles,* and electrical parts of articles, *not specially provided for* [emphasis added] | 5.5% ad val. |

*Claimed by plaintiff under:*

| A685.70 | Bells, sirens, indicator panels, burglar and fire alarms, and *other sound* or visual *signalling apparatus, all the foregoing which are electrical,* and parts thereof [emphasis added] | Free. |

*Alternatively claimed by plaintiff under:*

Electrical measuring, checking, analyzing or automatically-controlling instruments and apparatus, and parts thereof:

\*       \*       \*       \*       \*       \*       \*

| A712.49 | Other | Free. |

The question presented is whether the imported battery-operated metal detectors are electrical articles, as classified by Customs, or other sound signalling apparatus, as primarily claimed by plaintiff, or other electrical measuring, checking or analyzing apparatus, as claimed alternatively.

On the record before the court, and for the reasons that follow, it is the determination of the court that the imported metal detectors are properly classifiable as "other sound * * * signalling apparatus" under item A685.70, TSUS, and, therefore, are eligible for duty-free entry pursuant to the GSP.

It has been stipulated by the parties that the metal detectors are designed to emit an audible buzzing signal when their search coils come in proximity to a metallic object, and that their operation depends upon an electrical phenomenon which varies according to the factor to be ascertained. It has also been stipulated that if the metal detectors are properly classifiable under either item A685.70, TSUS, or item A712.49, TSUS, they are entitled to entry free of duty pursuant to the GSP.

One of plaintiff's three witnesses at the trial was Mr. Francis J. McClure, the comptroller of A & A International, Inc., who demonstrated the operation of the imported merchandise. He testified that he gained personal knowledge of metal detectors while manager of a Radio Shack retail outlet, a position he held prior to his employment with plaintiff. Radio Shack is a retail chain which sells plaintiff's products to the general public. Mr. McClure stated that

he was familiar with the imported metal detectors, as he had assembled, tested and operated them since Radio Shack first introduced them to the public.

As for the use of the metal detectors, Mr. McClure testified that a consumer would purchase them to detect the presence of ferrous metal located underground. He demonstrated the operation of the metal detector, explaining that it would first be adjusted to emit no signal when out of the presence of metal. Once properly adjusted, when in close proximity to metal, the detector would emit an audible "clicking-type" sound. As the detector came closer to the exact location of the metal, the clicking would become faster and louder, emitting the loudest sound when directly over the metal.

Out of Mr. McClure's vision, plaintiff's attorney placed several metallic objects beneath layers of styrofoam peanuts in a four-foot square box with six-inch sides. Mr. McClure adjusted the detector, and then passed the detector's search coil over the box. The detector began to sound, and Mr. McClure retrieved a tin can from the box. Mr. McClure then retrieved a watch, a 9-volt battery and another can. Utilizing the sound or tone created by the first tin can as the yardstick, Mr. McClure explained the differences in pitch created by the successive items. From the varying sounds emitted, he accurately predicted their size in comparison to that of the tin can.

Mr. McClure explained that the metal detector could differentiate between two metal objects of different sizes if the objects were located at the same depth. He noted that the pitch of the signal would vary with the distance from the metal to the detector's search coil, and with the size of the metal. He stated that an average consumer could make these distinctions once he or she had practiced using the item, and, hence, had trained the ear to distinguish the various sounds emitted.

At the request of defendant's attorney, Mr. McClure performed another demonstration. The metal detector emitted a noise when its coil was approximately two inches above a battery and a watch. At a height of four inches, however, the detector could only locate the battery. Mr. McClure explained that the mass and depth of an item were determinant in activating the detector. An additional demonstration showed that, by readjusting the detector, the search coil could locate smaller objects, specifically, a dime and a penny.

Defendant's witness, Mr. Robert Podhrasky, testified that he was employed as chief engineer of Garrett Electronics, a manufacturer of metal detecting equipment. Mr. Podhrasky, who has held the position of chief engineer for ten years, stated that his duties are to direct and participate in the design of metal locating equipment.

Mr. Podhrasky testified that metal detectors are used to locate the presence of metal. He stated that the metal detector in question could not tell the user what type of object is buried, nor could it identify the specific quantity of the object. He also testified that

the sole function of the detector is to emit an audible sound when it comes into close proximity with a metal object.

Mr. Podhrasky described, and performed a demonstration with a more expensive and more sophisticated metal detector manufactured by his company. Although it was clear that this more expensive metal detector could "screen out" certain objects and could be more "finely tuned" than plaintiff's imported detector, there was no doubt that the defendant's exhibit as well as the merchandise in issue were both metal detectors.

Examination of the representative sample of the imported merchandise, the testimony of all the witnesses, and the demonstrations conducted at trial, conclusively established that the importation is accurately described as a battery-operated metal detector. The testimony and demonstrations further established that the intensity and volume of the signal varied with the distance from the metal to the detector's search coil, and with the size of the metal. All the witnesses stated that the average consumer could train the ear to distinguish the various sounds emitted by the detector. With sufficient experience, the user could determine the size and depth of the buried metallic objects.

The testimony left no doubt that the metal detector is activated and signals only when metal is present. If the detector is moved away from the place where the metal is located, no sound is emitted. It is also clear that the detector's sole function is to emit a buzzing noise when in close proximity to a metallic object.

In challenging the Customs classification of the imported metal detector, plaintiff submits that the record conclusively establishes that it is a device which: (1) gives notice or information, (2) by means of an audible signal, (3) of a specific event which has taken place, that is, it has come into close proximity with a metallic object. Plaintiff contends that, since the detector's sole function is to emit an audible buzzing signal only when it approaches a metal object, it should be properly classifiable as sound signalling apparatus under item A685.70, TSUS.

Alternatively, plaintiff contends that the testimony demonstrates that the operation of the importation depends upon an electrical phenomenon which varies according to the factor to be ascertained and that the metal detectors permit the user to measure the quantity and distance of the metal from the user. Hence, plaintiff urges that if the imported metal detectors are not classified under item A685.70, TSUS, as sound signalling apparatus, they fall within the purview of other electrical checking and measuring devices, under item A712.49, TSUS.

Defendant maintains that plaintiff has failed to prove that the metal detectors fall within the class of merchandise classifiable under item A685.70, TSUS, or item A712.49, TSUS. Therefore, defendant asserts that plaintiff has not rebutted the presumption of

correctness which attaches to the Customs classification. 28 U.S.C. § 2639(a)(1).

Defendant states that "sound signalling apparatus" includes merchandise designed to give notice, warning or information, and communicate an emergency, special event, or temporary or abnormal condition. Defendant argues that the metal detector's sole purpose is to search and explore beach and picnic areas to locate buried metal objects, and does not give notice of any emergency or special event. It asserts that a metal detector is not *ejusdem generis* with the exemplars listed under item A685.70, TSUS, namely bells, sirens, indicator panels, burglar and fire alarms.

Defendant also contends that a metal detector is more than a mere signalling device, and, as such, is not properly classifiable under item A685.70, TSUS. According to the defendant, the metal detector's chief use is to detect and locate buried objects, and, therefore, has a function other than merely to signal. Hence, defendant contends that the metal detector is other than, or more than a signalling apparatus.

In response to plaintiff's claimed alternative classification, defendant argues that the importation, even though it depends on electrical phenomenon, does not measure or check within the meaning of item A712.49, TSUS. Defendant claims that it merely indicates the presence of metal, but cannot identify the object's size, weight, composition or distance. Consequently, defendant contends that the metal detector does not check or measure metal within the common definitions of those terms.

General Interpretative Rule 10(c) provides that "an imported article which is described in two or more provisions of the schedules is classifiable in the provision which most specifically describes it * * *." To determine which category most specifically describes an imported article, General Interpretative Rule 10(d) requires that the court determine the article's chief use. For this purpose, the nature and design of the sample of the importation may often be of great probative value. *United States* v. *Halle Bros. Co.*, 20 CCPA 219, T.D. 45995 (1932).

As in all classification cases, the court must examine the imported merchandise and the record established by the parties in light of the competing tariff provisions.

This court, in prior cases, has considered the nature of the articles covered under item 685.70 by the provision, "other sound or visual signalling apparatus." In *Oxford International Corp.* v. *United States*, 75 Cust. Ct. 58, C.D. 4608 (1975), the importations were bicycle taillights which were classified under item 653.40 as illuminating articles. In upholding the classification and denying plaintiff's claim for classification under item 685.70 as "electrical visual signalling devices," the court stated that the provision, "other sound or visual signalling apparatus," must exclude articles

which operate *continuously* and which do not warn of the existence of emergencies *or special circumstances.* 75 Cust. Ct. at 68.

In this 1975 *Oxford* case, since it was evident that the lighting function of the taillights was necessary to their design and use, and that they functioned by casting a *steady* and *continuous* beam of light, the court held the importations were not "electrical visual signalling devices," but functioned primarily as illuminating articles. The court also indicated that "[t]he doctrine of *ejusdem generis* supports the interpretation that item 685.70 encompasses only those devices whose function is to call attention to *temporary* or *abnormal* conditions." *Id.* at 68 (emphasis added). The court added that "[a]ll of the named devices [bells, sirens, indicator panels, burglar and fire alarms] are activated or function in *temporary* or *abnormal* situations only," whereas the function of the taillights was to "light up the rear end of a bicycle to make it visible to oncoming cars." *Id.* at 68 (emphasis added). It concluded, therefore, that the taillights were properly classified as illuminating articles.

In an earlier case, chrome horn-lights, used solely on bicycle handlebars and classified as bicycle parts under item 732.36, were also claimed to fall under item 685.70, as "electrical sound or visual signalling apparatus." *Oxford International Corp.* v. *United States,* 70 Cust. Ct. 217, C.D. 4433 (1973). In this 1973 *Oxford* case, the court held that the horn portions of the merchandise were electrical sound signalling devices, but that the light portions served primarily to illuminate rather than to signal. It is well settled that a combination or multifunction article is not classifiable for tariff purposes under a specific provision describing only one of its functions. Thus, the court held that the imported merchandise was more than a "sound or visual signalling apparatus."

The court also noted that the light portion of the horn-lights, when turned on, emitted a steady, continuous beam, and that they were readily distinguishable from the 4-way flasher switches which formed a part of an emergency flasher system in *Fedtro, Inc.* v. *United States,* 59 CCPA 16, C.A.D. 1028, 449 F.2d 1395 (1971). The court examined several definitions of the word, "signal," and noted that the function of a signal was to convey information or give notice. It stated that "a horn is a device to give notice, warning or information by an audible sign, as an indication of an event or of danger." Although the horn portion of the imported merchandise was "a sound signalling device," the court, nevertheless, concluded that, because of the light portion, the imported horn-lights did not fall under item 685.70.

What was said of the horn portion in this *Oxford* case can be said of the metal detector in the present case since the evidence conclusively establishes that the detector gives an audible signal *only* when it detects the presence of metal. It therefore indicates to the user the existence of a *temporary condition,* i.e., the presence of metal. Although it may not warn of an emergency, the metal detec-

tor nevertheless *signals,* in that it gives notice or calls attention to a *special circumstance.* Hence, it is "a sound signalling apparatus" as described by this court.

The court does not agree with defendant's contention that the mere indication of the presence of metal is not the type of abnormal or temporary event which would bring the merchandise within the purview of sound signalling apparatus. The defendant would restrict the definition of "signal" to warnings of an emergency or "peculiar" situation. This court, however, in both *Oxford* cases did not give such a restrictive meaning to the word "signal." Rather, as indicated, a signal may simply convey information or notify of a specific event which will be readily understood by the user, and need not warn only of an emergency. As applied to the provision for "sound or visual *signalling* apparatus," the court has stated that all of the enumerated devices "are activated or function in temporary or abnormal situations only." 75 Cust. Ct. at 68. To interpret the statutory language as suggested by the defendant would also ignore the presence of the words "indicator panels" as one of the enumerated articles in item 685.70, as well as the holdings of *Fedtro* and other pertinent cases. *See for example Intercontinental Air Freight, Inc.* v. *United States,* 62 Cust. Ct. 214, C.D. 3731 (1969) (court held that digital indicator panels were visual signalling apparatus in that they conveyed numerical information).

Defendant also argues that the metal detector is more than a signalling apparatus, and that judicial precedents preclude its classification as sound signalling apparatus. Defendant claims that the metal detector is designed to locate and identify the presence of metal, and to assist the user in retrieving metal objects. Hence, defendant reasons that the signal is merely incidental to or in furtherance of the primary use of the imported article, to wit, to locate metal objects.

Clearly, the sole function of the metal detector is to detect metal objects. The sound that it emits merely signals or notifies the user of the temporary event that metal has been detected. It is still solely a metal detector since the sound "did not give the article a use in addition to its intended use" as a metal detector. *See Oxford International Corp.* v. *United States,* 70 Cust. Ct. at 224, citing *Astra Trading Corp.* v. *United States,* 56 Cust. Ct. 555, C.D. 2703 (1966), which held that a screwdriver with an illuminating feature "was not more than a screwdriver since the illuminating feature did not give the article a use in addition to its intended use as a screwdriver."

On this subject, Judge Newman in *Ashflash Corp.* v. *United States,* 76 Cust. Ct. 112, 115–16, C.D. 4643, 412 F. Supp. 585 (1976), has stated that:

> It is well settled that where merchandise has a single primary function and an incidental, subordinate, or secondary

function, it is classifiable on the basis of its primary design, construction, and function. * * * [Citations omitted.]

Further, a long line of authorities holds that merchandise which constitutes more than a particular article or which has additional nonsubordinate or coequal functions is not classifiable as that article. * * * [Citations omitted.]

In *Ashflash,* the merchandise consisted of portable battery-operated "blinker" lanterns, which contained an illuminating searchlight as well as an automatic signal-warning red flasher for emergency use. Customs had classified the blinker lanterns as portable electric lamps under item 683.80, TSUS. Plaintiff claimed that the blinker lanterns were properly classifiable under item 688.40, TSUS, as electrical articles not specially provided for. The court found that the blinker lanterns' searchlight and warning flasher, "although utilizing a common power source, * * * have separate bulbs, sockets, lenses, wiring, contacts, and in most of the models separate switches * * *." *Id.* at 115. The court also found that the blinker lanterns had two coequal primary functions—the light which served to illuminate, and the flasher which served to signal. The searchlight could be used alone or in conjunction with the flasher. The flasher, as well as the light, could be used alone. Hence, since the blinker lantern was "more than" a portable electric lamp which only served to illuminate, it was not specifically classifiable under item 683.80, TSUS. Because of the two coequal separate functions, the blinker lantern in *Ashflash* was held to be dutiable as other electrical articles under item 688.40, TSUS.

Since the blinker lantern in *Ashflash* clearly had two distinct, coequal functions, to illuminate and to signal, with each function operating independently of the other, defendant's reliance on that case is misplaced. The metal detector at bar has been conclusively shown to possess but one function—to emit an audible signal only when in close proximity with metal objects. Clearly, the metal detector must first detect the existence of metal before signalling its presence. It will not emit a signal when metal is not present, but will only sound when the search coil nears a metal object.

In view of the foregoing, it is the determination of the court that the imported metal detector is properly classifiable under item A685.70, TSUS, as "other sound * * * signalling apparatus," and is entitled to enter duty free pursuant to the GSP. In view of this determination, it is unnecessary to consider plaintiff's alternative claim for classification under item A712.49, TSUS.

The claim is sustained, and judgment will issue accordingly.